**Joseph Alan LYKINS, Appellant**

v.

**UNITED STATES DEPARTMENT OF JUSTICE and Attorney General of the United States.**

No. 83–1031.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 9, 1983.

Decided Jan. 27, 1984.

---

Eric R. Glitzenstein, Washington, D.C., with whom Alan B. Morrison and Katherine A. Meyer, Washington, D.C., were on brief, for appellant.

Michael J. Ryan, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the briefs were filed, and Royce C. Lamberth, R. Craig Lawrence, and John C. Martin, Asst. U.S. Attys., Washington, D.C., were on brief, for appellees.

Before WRIGHT, WALD and EDWARDS, Circuit Judges.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

Opinion dissenting in part and concurring in part filed by Circuit Judge HARRY T. EDWARDS.

J. SKELLY WRIGHT, Circuit Judge:

In this Freedom of Information Act (FOIA) case appellant—a federal prisoner—sought relief in the District Court for the refusal of the United States Parole Commission to release three documents to him: his presentence report, a few lines excised from a letter written by a probation officer to the Commission, and a psychological report written about him. The District Court granted the Commission's motion for summary judgment and dismissed appellant's suit. In this opinion we reverse the District Court with respect to the presentence report and the psychological report, and affirm the District Court's holding that the Commission did not have to release the material excised from the letter.

### I. FACTUAL BACKGROUND

On October 5, 1981 appellant made a FOIA request to the Parole Commission for a number of documents about himself in the possession of the Commission. After some delays—allegedly due to the large number of pending requests—the Commission released some of the documents to appellant on December 18, 1981, and then released additional documents on April 21, 1982. The Commission withheld all or part of three documents:

(1) A presentence report originally prepared in 1977 by a probation officer for the District Court for the Eastern District of Virginia (hereinafter referred to as the "Virginia District Court"). The Commission withheld the entire report on the ground that it was a court document rather than an agency record, and that it therefore was not subject to FOIA. *See* 5 U.S.C. § 552(a)(3) & (4)(B) (1982) (providing that agencies make "agency records" available to the public and granting District Courts authority to order production of "agency records improperly withheld").

(2) Portions of a letter (the "Benoit letter") from Probation Officer Thyra Benoit to a Parole Commission employee, dated March 3, 1981. The Commission alleges that disclosure of the excised portions of the letter would reveal the identity of a confidential source, and those portions are therefore privileged under Exemptions 7(C) and (D) of FOIA. *See* 5 U.S.C. § 552(b)(7)(C) & (D) (1982).[1]

(3) A "psychological test screening report" (hereinafter referred to as the "psychological report"), dated December 29, 1977, and prepared by the Bureau of Prisons staff. This report was withheld in its entirety under FOIA Exemptions 5 and 7(C), 5 U.S.C. § 552(b)(5) & (7)(C) (1982),[2]

---

1. Insofar as is relevant here, these provisions state that FOIA does not apply to "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would * * * (C) constitute an unwarranted invasion of personal privacy, [or] (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, * * * confidential information furnished only by the confidential source * * *."

2. Section 552(b)(5) excludes from FOIA "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" The relevant portions of § 552(b)(7)(C) are quoted in note 1 *supra*.

on the ground that its disclosure would be potentially disruptive to appellant's response to institutional programs.

Meanwhile, as the Commission was processing appellant's request, appellant filed a FOIA complaint in the District Court for the District of Columbia (hereinafter referred to as "D.C. District Court") on January 11, 1982. On February 22, 1982 he moved for summary judgment, and the government filed a cross-motion for summary judgment on May 17, 1982. The government accompanied its motion with affidavits of Linda Marble, Chief Case Analyst for the National Appeals Board of the Parole Commission (hereinafter the "public Marble affidavit"), and Billy Torrans, Chief Probation Officer for the Virginia District Court (hereinafter the "Torrans affidavit"). The D.C. District Court held a hearing on September 23 (in appellant's absence because appellant was incarcerated and litigating his FOIA case *pro se* ), at which the court requested a supplemental affidavit concerning the Benoit letter and the psychological report. On October 8 the government submitted a second affidavit of Linda Marble (hereinafter the "*in camera* Marble affidavit"), along with complete copies of the Benoit letter and the psychological report.

On October 27, 1982 the D.C. District Court entered a memorandum opinion and order granting the government's motion for summary judgment. The court held that the presentence report was an agency record and thus subject to FOIA. However, the court held that, because the Virginia District Court "considers presentence reports confidential court documents which it loans to the Parole Commission only to enable the Commission to carry out its statutory function," Memorandum Opinion in D.D.C.Civil Action No. 82–241 (October 25, 1982) (Dist.Ct.Op.) at 4, Joint Appendix (JA) 79, the Parole Commission had not "improperly" withheld it within the meaning of 5 U.S.C. § 552(a)(4)(B) (1982) (granting District Courts authority to order release of

"agency records improperly withheld"). The court also held that, based in part on the information in the *in camera* Marble affidavit, the Benoit letter portions were exempt from FOIA for the reasons urged by the government. Finally, the court held that, based again in part on the *in camera* Marble affidavit, the psychological report also came within the FOIA exemptions urged by the government. Appellant here challenges all of these holdings.[3]

## II. The Presentence Report

■ In *Carson v. U.S. Dep't of Justice,* 631 F.2d 1008 (D.C.Cir.1980), this court held that a presentence report is an agency record for purposes of FOIA. In this case the Parole Commission ignores the rationale underlying our *Carson* decision and once again advances the argument we rejected in *Carson;* appellees' argument reduces to the assertion that, because presentence reports originate in the courts (which are not "agencies" under FOIA), the originating court may under current law continue to control the report after it has been turned over to the Parole Commission. Under the principles developed in *Goland v. CIA,* 607 F.2d 339 (D.C.Cir.1978), *vacated in part on other grounds,* 607 F.2d 367 (D.C.Cir.1979), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980), such control would be sufficient to make the report a "court record," rather than an "agency record," and thus outside the scope of FOIA. Furthermore, appellees and the D.C. District Court seem to believe that the Virginia District Court's assertions of control over the presentence report, if not sufficient to deny the report the status of agency record, should nonetheless be sufficient to make the Parole Commission's withholding of the report not "improper." The result of this line of reasoning would be the same as the result we rejected in *Carson:* the presentence report would be beyond the scope of FOIA.

---

**3.** The District Court also rejected allegations in appellant's complaint that he was entitled to some of the materials pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a (1982). Because

appellant does not raise any Privacy Act issues in his brief or argument on appeal, the District Court's decisions on these issues are not before this court.

We here reaffirm our decision in *Carson*: a presentence report in the hands of the Parole Commission under current law is an agency record for purposes of FOIA. We once again reject the arguments we rejected in *Carson* and we also decline to entertain these arguments under the guise of a discussion of what is an "improper" withholding. We believe that our *Carson* decision was clear enough on these points. However, if any doubts remain, we hope that our discussion here finally settles the status of presentence reports under FOIA.

## A. *Agency Records*

In *Goland v. CIA, supra,* this court grappled with the problem of what constitutes an "agency record" for purposes of FOIA. In *Goland* the CIA had refused to release records concerning the legislative history of the CIA's organic statutes. This court affirmed the refusal on the ground that the document sought (a transcript of a secret House of Representatives hearing) was a congressional document rather than an agency record. The *Goland* court stated that the appropriate test to determine whether a public document was an agency record was "whether under all the facts of the case the document has passed from the control of Congress and become property subject to the free disposition of the agency with which the document resides." 607 F.2d at 347.

*Carson* applied the *Goland* test to presentence reports. The 10th Circuit, in *Cook v. Willingham,* 400 F.2d 885 (10th Cir.1968) (*per curiam*), had held with little discussion that presentence reports are not agency records, on the ground that such reports were prepared by courts, which are not

"agencies" for purposes of FOIA. *See* 5 U.S.C. § 551(1)(B) (1982). The *Carson* court neither approved nor disapproved the *Cook* result, but held that the law concerning the use of presentence reports had changed substantially in two ways since the time of *Cook.* First, Rule 32(c) of the Federal Rules of Criminal Procedure required sentencing courts to disclose much of the contents of presentence reports to requesting defendants before imposing sentence. This provision had been added in 1975, and had "substantially dilute[d] the sentencing court's control over the presentence report." *Carson, supra,* 631 F.2d at 1012. Second— and more importantly—Congress had recently given the Parole Commission important responsibilities with respect to presentence reports. The Parole Commission and Reorganization Act, Pub.L. 94–233, 90 STAT. 219, had required the Parole Commission to use presentence reports in making parole determinations, *see* 18 U.S.C. § 4207 (1982), and had required courts to transmit the reports to the Parole Commission for these purposes, *see id.* § 4205(e). The statute had also required the Parole Commission to grant requesting prisoners "reasonable access" to presentence reports in most cases. *See id.* § 4208(b). Because the presentence reports thus had come to serve an important function in the Commission's decisionmaking process, the *Carson* court concluded that the Commission exercised considerable control over the reports. Therefore, under *Goland,* the reports were as a matter of law to be considered agency records.[4]

It is important to emphasize the scope of the *Carson* holding. Nowhere in *Carson* is there so much as a hint that the history of

---

4. The government argues that, contrary to the conclusion of the *Carson* court, the language of Rule 32(c) in fact militates against the conclusion reached there—that a presentence report is an agency record. The government points out that the amended language of Rule 32(c) requires that a judge disclose to a defendant much of the presentence report before imposing sentence, but still requires return of all copies of the report "unless the court, in its discretion[,] otherwise permits." The government argues that to hold the report discoverable under FOIA would render meaningless the

sentencing court's ability to forbid the defendant to retain a copy of the report after sentencing. Brief for appellees at 9 n. 3. The *Carson* court, in reaching its result, necessarily disposed of this argument. But we note that, even under our holding today, the court's discretion to require return of part or all of the report is far from a nullity. For, even if the report is an agency record, it is not *thereby* discoverable; the possibility remains, as *Carson* recognized, that all or part of the report may remain confidential under FOIA's exemptions.

the particular presentence report in question had any bearing on the court's decision. Rather, the *Carson* court held that the law, as well as the usage, concerning presentence reports gave the Parole Commission considerable control over them.[5] Under *Goland,* of course, the existence of this control made the documents into agency records subject to FOIA.

Appellees here argue that an originating entity may so restrict use of a presentence report it sends to an agency covered by FOIA that the document remains under the control of the originating agency and never becomes an agency record. In this case the Torrans affidavit claims that it is the Virginia District Court's "policy" that "[a]ll Presentences are deemed to be loaned to the Parole Commission and Bureau of Prisons to enable them to carry out their official functions, and should be returned to the [Virginia District] Court after such use, or upon request. Disclosure of Presentence Reports has been authorized only so far as to comply with 18 U.S.C. [§] 4208(b)(2)." JA 61. According to appellees, the Virginia District Court's assertion of this policy enabled it to retain control over the presentence report when it transferred the report to the Parole Commission.

■ In the face of *Carson,* we find appellees' argument to be without merit. Given the functions that presentence reports serve in accord with actual usage and congressional enactment, the Virginia District Court's assertions of control were irrelevant for purposes of determining whether the presentence report was an agency record. As we held in *Carson,* the fact is that the Virginia District Court—whatever its policy may be—does not and cannot control presentence reports after it has turned them over to the Parole Commission.

## B. *Improperly Withheld*

The D.C. District Court relied on *GTE Sylvania, Inc. v. Consumers Union,* 445 U.S. 375, 100 S.Ct. 1194, 63 L.Ed.2d 467 (1980), to hold that, although the presentence report was an agency record, it had not been "improperly" withheld. *See* Dist.Ct.Op. at 4, JA 79. In *GTE Sylvania* a Delaware District Court had issued an injunction forbidding the Consumer Products Safety Commission (CPSC) from releasing certain documents to the public. After the injunction was issued, Consumers Union filed a suit in D.C. District Court seeking release of the documents under FOIA. CPSC's defense in that suit was that it had not *improperly* withheld the documents, because its withholding was merely in obedience to the Delaware court order. The Supreme Court agreed with CPSC that the agency's withholding of the documents was not improper; since such "impropriety" is a prerequisite for a court to order release of documents under FOIA, *see Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980), the Supreme Court held that the D.C. District Court could not grant such relief.

According to the D.C. District Court, the Virginia District Court's "policy" forbidding the Parole Commission to release presentence reports is analogous to the injunction that was issued by the Delaware District Court in *GTE Sylvania.* However, the reasoning of *GTE Sylvania* in fact undermines the D.C. District Court's holding. As the Supreme Court noted, *GTE Sylvania* was an application of the "established doctrine that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." 445 U.S. at 386, 100 S.Ct. at 1201. The rationale of that decision, as elucidated in such well-known cases as *United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), and *Walker v. City of Birmingham,* 388 U.S. 307, 314–321, 87 S.Ct. 1824, 1828–1832, 18 L.Ed.2d 1210 (1967), is that those who object to a court order are expected to

---

5. It is true that *Goland* had referred to "all the facts of the case" in formulating the control test. *See* 607 F.2d at 347. By using this language, the court evidently intended to point out that no particular indicia of control will be dispositive in every case. It would be a mistake to read this language to foreclose the possibility that law and usage make certain types of documents agency records, regardless of minor factual variations in particular cases.

make their objection by means of the rules and procedures in accord with which the judicial system operates, for a court's ability to command adherence to its procedures and to resolve disputes depends on its ability to compel obedience to orders properly issued. Those rules and procedures provide a fair opportunity to object to or appeal mistaken rulings, and even interested individuals who are not parties to the proceedings have the opportunity to intervene under the modern Federal Rules of Civil Procedure. *See, e.g.,* Fed.R.Civ.P. 24.

In this case, however, there were no formal judicial proceedings, no opportunity for Mr. Lykins to object to the court's "policy," no chance for intervention, and no concrete case or controversy before the Virginia District Court.[6] In these circumstances—very different from *GTE Sylvania's* formal injunction issued after a proceeding to which Consumers Union could easily have become a party—the Virginia District Court's "policy" deserves no greater deference than the expressed desires of any other governmental body. To the extent that the Parole Commission has control of the presentence report—as we held in *Carson*—the "policies" of the Virginia District Court do not

override appellant's right under FOIA to see the report. Whatever may be the power of the Virginia District Court to order its own business on the basis of "policies" of this character, that court cannot by articulating its desires on its own motion determine the rights of third parties not before it and over whom it has no jurisdiction.

The consequence of accepting the D.C. District Court's understanding of *GTE Sylvania* would be once again to let in through the back door the arguments we rejected in *Carson*. The Virginia District Court's "policy" is relevant, if at all, only to the question whether it has retained control of the presentence report and thus prevented it from becoming an agency record subject to FOIA. As we discussed above, in *Carson* we answered that question by holding that a District Court cannot so retain control. The inquiry into whether a document is "improperly" withheld is a very different inquiry, directed not at the desires of the originating agency (whether it be a court, Congress, or other governmental body not covered by FOIA), but at the question whether a court of competent jurisdiction over the subject matter and over the parties has issued a valid injunction.[7] Considera-

---

**6.** In fact, outsiders evidently had no way of knowing of the supposed "policy" until some time in March of 1981 (long after Lykins' report had been transmitted to the Parole Commission) when the Virginia District Court began stamping presentence reports released to other agencies with a rubber stamp stating its "policy" of confidentiality. Torrans affidavit, JA 61. Given our holdings in this case, it is clear that the presence or absence of the rubber stamp on Lykins' own presentence report is irrelevant. In accord with our *Carson* holding re-affirmed here, the rubber stamp would have failed to keep the report from becoming an agency record. However, the very secrecy of the Virginia District Court's "policy" illustrates one reason why that "policy" is not entitled to the kind of undeviating obedience the Supreme Court ordered in *Mine Workers* and *Walker.*

**7.** In a post-argument submission the government has informed us that the "policy" of the Virginia District Court is now enshrined in an "order" dated December 9, 1983. The issuance of this order does not affect our analysis or our conclusion that the presentence report is being improperly withheld. The Virginia District Court's "order" was not an injunction of the kind at issue in *GTE Sylvania*, because it was

not issued as a part of a concrete case or controversy before the court. And if the Virginia District Court had no jurisdiction to issue an injunction binding the Parole Commission, the "order" therefore cannot be of the kind that would make the Commission's withholding of the report "proper" under *GTE Sylvania.*

*United Mine Workers* lends no support to the claim that the "order" here was a valid injunction deserving of the unyielding obedience that the Supreme Court required in that case. For the principle of *United Mine Workers* is not that any pronouncement of a court—regardless whether the court has subject matter jurisdiction or whether there is an Article III case or controversy—must be absolutely followed upon penalty of a contempt citation. Rather, the case stands for the more modest proposition that a court has inherent jurisdiction to determine its own jurisdiction in a case, and that an order it issues while it makes this determination is binding. *See* 330 U.S. at 290, 292–293, 67 S.Ct. at 694, 695. There is no indication that the Virginia District Court's order had anything to do with any concrete case or controversy before it, and *United Mine Workers* therefore cloaks it with no additional dignity. Of course, as we state in text, we are not here questioning the ability of the Virginia

tions relevant to the application of the *Goland* control test would rarely, if ever, be relevant to the latter inquiry into the jurisdiction of a court. We refuse to transform the latter inquiry into an opportunity for the parties to re-litigate issues of control over documents that should be properly resolved in terms of the *Goland* control test for agency records.

### III. THE BENOIT LETTER AND THE PSYCHOLOGICAL REPORT

The trial court held that the excised portion of the Benoit letter was properly withheld under Exemptions 7(C) and 7(D) of FOIA, 5 U.S.C. § 552(b)(7)(C) & (D) (1982), and that the psychological report was properly withheld under Exemptions 5 and 7(C), 5 U.S.C. § 552(b)(5) & (7)(C) (1982). The District Court found these exemptions applicable in part on the basis of information contained in the *in camera* Marble affidavit. *See* Dist.Ct.Op. at 2–3, JA 77–78. Appellant does not seem to challenge the Commission's right to withhold information to protect the identities of confidential sources in general under Exemptions 7(C) and 7(D). Appellant argues instead that the court committed error (1) in relying upon *in camera* affidavits, (2) in failing to require more detailed and particularized public information from the agency about the contents of the materials withheld and the possible segregability of privileged parts from nonprivileged parts, and (3) in failing to explicate more specifically the findings necessary to demonstrate that the claimed exemptions are applicable. The Benoit letter and the

psychological report merit somewhat different analyses, and in what follows we affirm the District Court's holding with respect to the Benoit letter and reverse with respect to the psychological report.

### A. *The Benoit Letter*

The public Marble affidavit stated that "[f]ive sentences and a reference to a source were excised from a letter from U.S. Probation Officer Thyra R.J. Benoit to Michael J. Santella, Case Analyst of the Northeast Region, dated March 3, 1981. The purpose was to protect a confidential source of information which would become known through disclosure of the person's identity or the information supplied." JA 48. The remainder of the letter was released. For the reasons that follow, we hold that this information—coupled with the District Court's *in camera* inspection of the deleted portions of the letter—was sufficient to justify the excisions.

The seminal case of *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), established that the government must supply to a FOIA requester any reasonably segregable, nonexempt portions of documents that are in part exempt from FOIA's disclosure requirements. *Id.* at 825–827; *see also Yeager v. DEA,* 678 F.2d 315, 322 & n. 16 (D.C.Cir.1982) (discussing meaning of term "reasonably segregable"); 5 U.S.C. § 552(b) (1982) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record

District Court to issue housekeeping "orders" of this type to organize its own business. Rather, we are holding that an "order" of this type does not have the legal effect of the injunctions in *GTE Sylvania* or *United Mine Workers.*

We note that the result we reach here is supported by significant policy considerations. If the Virginia District Court's "order" were treated as a full-scale injunction, then Mr. Lykins may be denied his statutory right of action, for it is very unclear how a plaintiff like Lykins could challenge that order as unjustified; although a petition for intervention comes to mind, there is no ongoing proceeding in which he could intervene. Moreover, even if there were a mechanism by which a FOIA

plaintiff like Lykins could appear before the court to challenge the "order," the effect would be to permit the Virginia District Court to force FOIA plaintiffs seeking presentence reports originating in that district to bring their FOIA complaints there. But Congress explicitly laid venue in FOIA cases in "the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia." 5 U.S.C. § 552(a)(4)(B) (1982). Thus the plaintiff would be denied his right to venue in accord with the express statutory intention. At any rate, there is no reason why the Virginia District Court—which has its own interests in the report at stake—should be a preferred forum to hear this case.

after deletion of the portions which are exempt under this subsection."). The government then bears the burden of justifying nondisclosure of any withheld documents or portions of documents, *see Yeager,* 678 F.2d at 320; *Jordan v. U.S. Dep't of Justice,* 591 F.2d 753, 779 (D.C.Cir.1978) (*en banc);* 5 U.S.C. § 552(a)(4)(B) (1982). The government must supply the requester with detailed indexes itemizing each item withheld, the exemptions claimed for that item, and the reasons why the exemption applies to that item. *Vaughn,* 484 F.2d at 827–828. To the extent necessary, the government must supply affidavits in support of its claims of exemption.

 This detailed procedure serves at least three purposes: it forces the government to analyze carefully any material withheld, it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court. Because this last purpose can only be served if the detailed indexes and justifications are available to the requester, we have required that as much information as possible be made public. However, in cases in which a look at the withheld material itself would be useful, we have fully approved *in camera* examination of the withheld material by the trial court. *See Phillippi v. CIA,* 546 F.2d 1009, 1012–1013 (D.C.Cir.1976) ("It is clear that the FOIA contemplates that the courts will resolve fundamental issues in contested cases on the basis of *in camera* examinations of the relevant documents."); *Allen v. CIA,* 636 F.2d 1287, 1294–1300 (D.C.Cir.1980) (discussing the utility of *in camera* review of withheld material). Of course, such *in camera* examination is not a substitute for the government's obligation to provide detailed public indexes and justifications whenever possible. Rather, it will in most cases assist the District Court as a supplement to the detailed public record and adversary testing of the government's justifications for withholding information.

[5] These principles are sufficient to dispose of the Benoit letter. The Parole Com-

mission released virtually the entire contents of appellant's file (including over 138 documents). In addition, the Commission segregated the exempt portions of the Benoit letter (approximately five sentences) from the nonexempt portions of the letter (approximately 12 sentences). Although the Commission did not formally prepare a *Vaughn* index to the letter, the public Marble affidavit in fact provided all of the information that such an index would have disclosed: the amount of material excised, the exemptions claimed for the material, and the justification supporting the application of the exemptions to the material. The District Court properly examined *in camera* the entire Benoit letter, which was affixed to the *in camera* Marble affidavit. The District Court concluded that release of the five additional sentences would have compromised a legitimately confidential source, and therefore ruled that Exemptions 7(C) and 7(D) applied. We hold that the District Court followed a reasonable procedure with respect to the Benoit letter, and we have no reason to believe that it reached an incorrect result.

Appellant seems to object to the somewhat conclusory nature of the justification offered in the public Marble affidavit, and would therefore have us remand this issue to the District Court with instructions that the government should be required to make public further information about the deleted portions of the Benoit letter. To be sure, one of the square holdings of *Vaughn* was that the government may not justify withholding information in FOIA cases on the basis of sweeping or conclusory statements concerning the applicability of FOIA exemptions. But we do not believe that appellant can demonstrate on the facts of this case that the government's justification was improper under *Vaughn.*

 This court has recognized that there are occasions when extensive public justification would threaten to reveal the very information for which a FOIA exemption is claimed. *See, e.g., Hayden v. NSA,* 608 F.2d 1381, 1384–1385 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). Particularly in cases in

which the identity of a confidential source under Exemption 7(D) is at issue, the government may be unable to divulge more information publicly without giving away the information it is trying to withhold. In this kind of case, in which an agency has released most of the contents of a document and has otherwise met its FOIA obligations in good faith, a public statement that the remaining small portions would reveal a confidential source—coupled with *in camera* review of the excised portions of the document by the trial court, *see Allen v. CIA, supra,* 636 F.2d at 1298 ("Sufficiently detailed justifications [in public affidavits] for the agency's withholding is often impossible * * * because such justifications would reveal the very information sought to be protected.")—is sufficient to meet *Vaughn's* requirements. We hold that this principle governs the Benoit letter, and affirm the District Court on this basis.[8]

Our holding in this case should not be construed to grant approval to agencies and trial courts to ignore *Vaughn's* standards and to justify nondisclosure by means of general and conclusory statements; we remain fully committed to the procedures specified in *Vaughn.* However, when an agency has disclosed a great deal of a document and withholds only a few lines that would reveal the identity of a confidential source, and when the trial court's *in camera* review confirms that such a confidential source would be revealed, the kind of justification proffered in the public Marble affidavit does not violate *Vaughn's* strictures against overly sweeping and conclusory invocation of FOIA exemptions. *Cf. Lesar v. U.S. Dep't of Justice,* 636 F.2d 472, 492 (D.C.Cir.1980). In short, we do not here make an exception to *Vaughn's* requirements; rather, we hold that those requirements were met in this case.

## B. *The Psychological Report*

The psychological report raises more serious problems. The entire document was withheld from appellant, who thus has had little opportunity to discover even the kinds of material contained in the document. Moreover, the public Marble affidavit states only that "[a] psychological test screening report dated December 29, 1977, prepared by Bureau of Prison's [*sic*] Staff, was denied as it contains diagnostic material and conclusions of a psychological or psychiatric nature which, if known to Mr. Lykins, would be potentially disruptive to his response to institutional programs." The affidavit does not discuss the question of what parts of the report might be segregable and therefore subject to disclosure, nor does it relate particular parts of the report to particular FOIA exemptions, nor does it reveal any significant information about the length of the report or the circumstances surrounding its production.[9] Therefore, the public affidavit is clearly insufficient as a *Vaughn* index.[10]

---

**8.** If the public Marble affidavit is sufficient under *Vaughn* standards, then the trial court's own somewhat conclusory findings that release would endanger a confidential source are similarly appropriate: further justification of such a small excision in this context would itself endanger the source.

**9.** The affidavit goes on to state that "Mr. Lykins is presently an inmate in the Arlington County Detention Center. The Commission's regulations at 28 C.F.R. § 2.56(c)(1) protects [*sic*] diagnostic material, and staff members in preparing such reports do so under a promise of confidentiality per 28 C.F.R. § 2.56(c)(2). The document is stamped 'FOI EXEMPT' meaning that the Bureau of Prisons would deny it to a requester under the Freedom of Information Act as an inter-agency memorandum containing work product of the professional staff and containing opinions and conclusions." JA

49. This is all of the information in the public record concerning the psychological report.

**10.** The government suggests that the public record is sufficient to justify withholding the entire psychological report under Exemptions 5 and 7(C), because "Commission regulations at 28 C.F.R. § 2.56(c)(1)–(3) (1981) permit withholding of diagnostic material and material obtained under a promise of confidentiality, and * * * staff members prepare such diagnostic material under such a promise." Brief for appellees at 16. So far as we are able to tell from the record in this case, appellant first learned that the government was claiming Exemption 5 when the government filed its motion for summary judgment and first learned that the government was claiming Exemption 7(C) when he read the District Court's opinion in this case. As we point out below, it is the function of a *Vaughn* index in part to notify a FOIA plaintiff of the exemption being claimed,

■ The legitimacy of accepting *in camera* affidavits (as opposed to *in camera* review of withheld documents) has troubled this court in the past. Although *in camera* review of withheld documents is permissible (and even encouraged), we have held that a trial court should not use *in camera* affidavits unless necessary and, if such affidavits are used, it should be certain to make the public record as complete as possible. *See Arieff v. Dep't of Navy,* 712 F.2d 1462, 1470–1471 (D.C.Cir.1983); *Campbell v. Dep't of HHS,* 682 F.2d 256, 265 (D.C.Cir. 1982); *Yeager v. DEA, supra,* 678 F.2d at 324–325; *Allen v. CIA, supra,* 636 F.2d at 1298 n. 63; *Ray v. Turner,* 587 F.2d 1187, 1211 n. 43 (D.C.Cir.1978) (Wright, J., concurring in the remand); *Phillippi v. CIA, supra,* 546 F.2d at 1013. We have permitted such *in camera* affidavits in national security cases, *see Hayden v. NSA, supra,* 608 F.2d at 1384, and have stated that the use of such affidavits is at the discretion of the trial court, *Campbell, supra,* 682 F.2d at 260. As appellees contend, we have never limited the use of *in camera* affidavits to national security cases, but we have expressed reservations about such use in cases which do not involve national security. *See Campbell, supra,* 682 F.2d at 265; *Yeager, supra,* 678 F.2d at 324–325; *Allen, supra,* 636 F.2d at 1298 n. 63 (procedures "should be employed only where absolutely necessary"); *Ray, supra,* 587 F.2d at 1211 n. 43 ("procedure must be reserved for unusual and especially sensitive circumstances"). When a trial court does make use of *in camera* affidavits, it must see to it that such use is justified to the greatest extent possible on the public record, *see Yeager, supra,* 678 F.2d at 325; *Phillippi, supra,* 546 F.2d at 1013,[11] and must then make available to the adverse party as much as possible of the *in camera* submission, *see Hayden, supra,* 608 F.2d at 1388.

The above standards concerning the use of *in camera* affidavits arise from the judicial system's interest in an effective adversary system. In *Vaughn* we emphasized the crucial importance of providing as much information as possible to FOIA plaintiffs, so that the adversary system can function effectively in assisting the trial court to make a determination and producing a record that is susceptible to appellate review. *See Vaughn, supra,* 484 F.2d at 823–826; *accord Yeager, supra,* 678 F.2d at 324; *Phillippi, supra,* 546 F.2d at 1013. Even in cases in which we have permitted *in camera* affidavits, we have noted that they are only permissible if "the interests of the adversary process are outweighed" by other crucial interests. *Hayden, supra,* 608 F.2d at 1385.

■ In this case the District Court's failure to hold the government to the accepted standards for submission of *in camera* affidavits made it impossible for the adversary system to function effectively in the District Court. The record does not show any effort by the court or the government to supply appellant with a *Vaughn* index; appellant was given no information concerning which exemptions were claimed for the report, the circumstances surrounding the report's creation, the length of the report, the possibility of segregating exempt portions from nonexempt portions, or the identity of the author of the report. *Cf. Pollard v. FBI,* 705 F.2d 1151, 1155 (9th Cir.1983) (*in camera* affidavit accepted in case in which public affidavit had provided "detailed description of the withheld document"). In short, appellant had no oppor-

so that he can litigate the issues involved in that exemption.

11. Even in circumstances in which the use of an *in camera* affidavit has been fully justified, the District Court still would retain the obligation to see to it that materials withheld under FOIA exemptions genuinely qualify for those exemptions. In this case, for instance, the name of the author of the psychological report appears to be a segregable part of the report. After an examination of the *in camera* affidavit and the report itself, we are unable to find any legitimate justification for withholding the name of the author. However, because we remand to the District Court for further proceedings with respect to this report, and because the issue of whether exemptions were properly claimed with respect to the psychological report was never litigated, *see* note 10 *supra,* we do not pass on whether any given portions of the report should be released to appellant.

tunity to challenge the government's claim of exemption. Furthermore, there was no finding (and no basis in the record for a finding) that the government had a crucial interest in secrecy in this case that outweighed the importance of an effectively functioning adversary system and that would therefore justify circumvention of that system in this case. We therefore hold that the proper predicates for acceptance of *in camera* affidavits were not met in this case, and the District Court should not have relied upon the *in camera* Marble affidavit in reaching its decision.[12]

## IV. CONCLUSION

Because we here reverse the District Court's holding that the presentence report was not an agency record, we remand this case to the District Court. In filings with the District Court the government does not seem to have asserted that any particular FOIA exemptions would apply to all or part of the presentence report. The District Court should therefore consider carefully whether any new government claims of exemption are permissible under *Ryan v. Dep't of Justice*, 617 F.2d 781, 791–792 (D.C. Cir.1980), *Jordan v. U.S. Dep't of Justice, supra,* 591 F.2d at 779–781, and *Carson v. U.S. Dep't of Justice, supra,* 631 F.2d at 1015 n. 29. We also reverse the District Court's holding that the psychological report was exempt under FOIA. Our decision is based entirely on the District Court's failure to require an adequate public record with respect to this report, and we express no opinion as to whether some portions of the report may be exempt. However, on remand the District Court should require the agency to comply with the ordinary standards in FOIA cases, including release of any reasonably segregable portions of the report and preparation of an index relating any withheld portions to specific FOIA exemptions. Finally, we affirm the District Court's holding that the excised portions of the Benoit letter were exempt from release.

*Affirmed in part and reversed and remanded in part.*

HARRY T. EDWARDS, Circuit Judge, dissenting in part and concurring in part:

I dissent with respect to the majority's treatment of the psychological report. In analyzing this case under the Freedom of Information Act, I find absolutely no material distinction between the psychological report and the Benoit letter. The majority cites no significant differences between these two documents and, yet, affirms as to one but not the other. I would affirm as to both documents.

The record in this matter clearly indicates that Lykins did not receive a list of claimed Freedom of Information Act exemptions as to either the psychological report or the Benoit letter. It is equally plain, however, that the contents of the public Marble affidavit adequately informed Lykins of the nature of the claimed FOIA exemptions, thus enabling him to litigate any issues raised by either document. Therefore, to the extent that the public affidavit was deficient at all, it was equally deficient as to both documents. Nonetheless, because Lykins had adequate notice of the Government's proposed exemptions for both documents, and because, in any event, I can find no basis whatsoever for disclosure of the psychological report, I dissent from the decision to remand. The Government's failure in this case to adhere to the strict technical requirements of a *Vaughn* Index was at worst harmless error. In my view, to remand under these circumstances is merely to engage in empty formality and to require an already overburdened District Court to do the same.

---

12. Because the public Marble affidavit was sufficient to meet *Vaughn's* standards with respect to the Benoit letter, the District Court did not have to rely on the *in camera* Marble affidavit in ruling on the Benoit letter, and the trial court's apparent reliance would be at worst harmless error. *Cf. Salisbury v. United States,* 690 F.2d 966, 973 n. 3 (D.C.Cir.1982).