Scott ARMSTRONG, Appellant,

v.

EXECUTIVE OFFICE OF
THE PRESIDENT, et
al., Appellees.

No. 95–5377.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 9, 1996.

Decided Oct. 11, 1996.

As Amended Oct. 25, 1996.

Michael E. Tankersley, Washington, DC, argued the cause, for appellant, with whom Lucinda A. Sikes and Alan B. Morrison, were on the briefs.

Michael S. Raab, Attorney, United States Department of Justice, Washington, DC, argued the cause, for appellees, with whom Frank W. Hunger, Assistant Attorney General, Eric H. Holder, Jr., United States Attorney, Leonard Schaitman, Attorney, and Freddi Lipstein, Senior Counsel, United States Department of Justice, were on the brief.

Before: WALD, SILBERMAN and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

Separate Dissenting Opinion filed by Circuit Judge WALD.

SENTELLE, Circuit Judge:

Appellant Scott Armstrong appeals from three of the district court's rulings in his

Freedom of Information Act (FOIA) lawsuit. Armstrong argues that the district court erred by failing to conduct in camera review of four documents, by accepting an internally inconsistent explanation for why information in another document was withheld, and holding that the government need not reveal the names of lower-level FBI agents who participated in meetings at the White House. Armstrong initially raised a fourth contention that has since been mooted by the government's subsequent release of the document in question. We affirm the district court's ruling as to Armstrong's first two contentions. We reverse and remand the district court's judgment as to the third. We vacate the district court's judgment as to the issue that has now become moot.

## I. BACKGROUND

The claims before this court today arise from a three-count lawsuit originally brought by Armstrong in 1989. This court has dealt with other issues arising from this case in *Armstrong v. Executive Office of the President*, 90 F.3d 553 (D.C.Cir.1996) (petition for rehearing in banc pending), *Armstrong v. Executive Office of the President*, 1 F.3d 1274 (D.C.Cir.1993), and *Armstrong v. Bush*, 924 F.2d 282 (D.C.Cir.1991). The district court has issued numerous orders and opinions.

Armstrong's original FOIA request was for all documents from the Reagan Administration found in the Professional Office System (PROFS) maintained by the Executive Office of the President (EOP) and the National Security Council (NSC). PROFS is an office automation system that contains information such as e-mail correspondence, memoranda, and calendars. This initial request was for an enormous number of documents.

The number of documents requested has been substantially reduced over the course of this litigation. In February 1992, appellant narrowed his request to a subset of the PROFS materials. In September of that year the district court entered a stipulation and order that the government process and release PROFS materials that had already been printed out in hard copy. In January 1994, the district court entered another or-der, further narrowing the scope of appellant's request and ordering the government to comply. The scope of the request has been further limited by an agreement between the parties.

In response to these requests, the government has released a substantial number of documents, many of which have had portions redacted. Appellant has, over the years, challenged these redactions and the government has responded to some of these challenges by releasing the requested documents in full. The remaining redacted documents are described in the *Vaughn* index prepared for this litigation.

The parties filed cross motions for summary judgment. Appellant requested that the district court review 17 documents in camera, urged the court to compel the disclosure of the names of lower-level FBI agents who attended White House meetings, and challenged the government's failure to disclose a one-page Office of Science and Technology Policy (OSTP) document. The district court ruled that it would review four documents in camera, but upheld the government's refusal to disclose the names of the FBI agents and the OSTP document. After reviewing the four documents in camera, along with an in camera affidavit supplied by the government, the district court held that all of the redactions were justified. The issue regarding the OSTP document has been mooted by the government's disclosure of the document. Appellant now makes three challenges to the district court's ruling.

## II. ANALYSIS

*A. Issue 1—The District Court's Failure to Review Documents B–1, B–2, B–3, and B–5 In Camera*

FOIA requires the government to make public any non-exempt material that is "reasonably segregable" from a record that is otherwise legitimately withheld. 5 U.S.C. § 552(b). In making a determination as to segregability or any other question under FOIA, a district court judge "may examine the contents of ... agency records in camera...." 5 U.S.C. § 552(a)(4)(B). This Circuit has interpreted this language to give

district court judges broad discretion in determining whether in camera review is appropriate. *Center for Auto Safety v. Environmental Protection Agency,* 731 F.2d 16, 20 (D.C.Cir.1984); *Ray v. Turner,* 587 F.2d 1187, 1195 (D.C.Cir.1978).

■ We have also held, however, that the district court judge's discretion is not unlimited. Summary judgment may not be appropriate without in camera review when agency affidavits in support of a claim of exemption are insufficiently detailed or there is evidence of bad faith on the part of the agency. *Quiñon v. Federal Bureau of Investigation,* 86 F.3d 1222, 1228 (D.C.Cir.1996); *Hayden v. National Security Agency,* 608 F.2d 1381, 1387 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). In addition, a district court may err by " 'simply approv[ing] the withholding of an entire document without entering a finding on segregability, or lack thereof.' " *Schiller v. National Labor Relations Board,* 964 F.2d 1205, 1210 (D.C.Cir.1992) (quoting *Powell v. United States Bureau of Prisons,* 927 F.2d 1239, 1242 n. 4 (D.C.Cir.1991)).

Armstrong does not dispute that the government has met its burden that some portion of each of these four documents is exempt from disclosure. He argues rather that the government has not adequately explained why the exempt material in these documents is not segregable from the non-exempt material. He contends that in the absence of an adequate explanation as to non-segregability, the district court judge could not have upheld these exemption claims without conducting in camera review.

■ We affirm the district court's holding that the government has provided an adequate explanation for the non-segregability of each of these four documents. The government affidavits provided here show with "reasonable specificity" why the documents cannot be further segregated. *See Quiñon,* 86 F.3d at 1227; *Mead Data Central v. United States Department of Air Force,* 566 F.2d 242, 261 (D.C.Cir.1977). Given the legal adequacy of these explanations, the district court did not abuse its discretion in declining to conduct in camera review. 5 U.S.C. § 552(a)(4)(B) ("On complaint, the district court ... shall determine the matter de novo, and *may* examine the contents of such agency records in camera....") (emphasis added).

### 1. *Document B–1*

Document B–1 is an e-mail message from Oliver North entitled "Smoking Gun?" With the exception of the introductory phrase "At my request," the entire message has been redacted. In his Third Declaration, David Van Tassel of the NSC and the National Archives and Records Administration explained that "smoking gun" refers not to any covert activity by North or any other American official, but rather to a piece of intelligence about a foreign terrorist group. Third Van Tassel Decl. at ¶ 10. Van Tassel went on to explain that the "redacted segment cannot be segregated further because it discusses throughout intelligence data as well as cooperative counter-terrorist actions flowing from that intelligence." *Id.*

Appellant challenges the adequacy of this explanation for non-segregability. He contends that because the Second Van Tassel Declaration described this document as being in two portions, the Third Van Tassel Declaration's explanation is inadequate because it doesn't distinguish between the two portions of the document. This, he contends, violates *Schiller,* 964 F.2d at 1209, which requires an agency to correlate claimed exemptions with particular passages in withheld documents.

The rule of *Schiller,* however, was not violated here. *Schiller* requires the agency to correlate claimed exemptions with particular passages. The agency did this. The Third Van Tassel Declaration explains that the document could not be further segregated because it discusses sensitive intelligence data "throughout." This clearly covers both portions of the document that the Second Van Tassel Declaration originally described. This explanation is far more than what was given in *Schiller* where this court said that the district court and the Board "appear[ed] to have overlooked the segregability requirement." *Id.*

The government affidavit showed with "reasonable specificity" why this document

could not be further segregated. The district court judge had enough information to make his decision whether to grant summary judgment on this document. He chose to do so without conducting in camera review. This was not an abuse of discretion.

### 2. *Document B–2*

Document B–2 is a six-page PROFS note entitled "CONFRONTING LIBYA IN THE PRESENT POLITICAL CONTEXT." The entire text of the document after the subject page has been redacted. The *Vaughn* Index described this document as containing a lengthy analysis of the situation in Libya. The Third Van Tassel Declaration explains that "[t]his note consists of an extensive review of numerous intelligence cables, revealing one piece of specific intelligence after another. Accordingly, there are no further intelligible, non-classified portions which can be segregated." Third Van Tassel Decl. at ¶ 11.

Appellant argues that this description was inadequate to have permitted the district court to grant summary judgment without first conducting in camera review. As was his contention with Document B–1, appellant argues that this description impermissibly refers to the document by the whole rather than by the part.

This claim fails for the same reason that his complaint regarding Document B–1 fails. The government considered whether any of this document was segregable. It claimed that none of it was. It would have been extraneous to repeat that claim separately for every piece of information. The district court had enough information here to make a decision as to whether summary judgment was appropriate. It was not an abuse of discretion to make that judgment without first conducting in camera review.

### 3. *Document B–3*

Document B–3 is a one and a half page document from which everything has been deleted but the subject line, which reads "FYI." This message involves "[n]ot finally evaluated intelligence" which is "[n]ot separable from the source and subject country." Joint Appendix (JA) at 190, Item W34. The Third Van Tassel Declaration explained that "the redacted segment contains no intelligible portion which can be segregated without revealing the target country or the capacity of the intelligence source." Third Van Tassel Decl. at ¶ 12.

Appellant claims again that the explanation given was insufficient to allow the district court to make its de novo determination without first conducting in camera review. As was the case with the first two documents, we reject appellant's contention. The government's explanation provided the district court with enough information to decide the summary judgment motions without in camera review.

Appellant objects further that the district court should have conducted in camera review of Document B–3 because it required in camera review of Document B–4, for which the government had provided an explanation similar to the one it provided for B–3. We reject this argument as well. How the district court exercised its discretion with regards to Document B–4 is not dispositive in our review of whether it abused its discretion as to Document B–3.[1]

### 4. *Document B–5*

Document B–5 is a one-page e-mail note from Oliver North to his secretary Fawn Hall entitled "S–W–P Breakfast: Syria." The entire text of the document has been redacted except for the title. The initials S–W–P apparently refer to George Shultz, Caspar Weinberger, and John Poindexter. The withheld information "con-

---

1. We note here that the timing of the trial court's decisions in this matter is not material. The trial court decided to not review Document B–3 in camera before it had conducted in camera review of Document B–4. It then conducted its in camera review of Document B–4 and found that it had been appropriately withheld. At any point in this process the court could have changed its mind and decided to conduct in camera review of Document B–3. In light of its determination that Document B–4 had been appropriately withheld, however, it was reasonable for it to decline to do so.

cern[ed] a high-level United States Government discussion of likely European reaction to a terrorism matter." JA at 187. The document was initially withheld because disclosure would be "a gross violation of diplomatic confidentiality with possible personal damage to individual officials and sources." *Id.* The Third Van Tassel Declaration states that these sensitive topics "are discussed throughout the redacted segment and there are no further intelligible segments which can be segregated." Third Van Tassel Decl. at ¶ 14.

As was the case with the first three documents the government has explained why the document is exempt and why no portion of it can be segregated. This explanation is sufficient to allow the district court judge to award summary judgment without conducting in camera review.

■ The government has explained with reasonable specificity why these documents cannot be further segregated. This is all that is required, particularly in a case involving national security. *See, e.g., Founding Church of Scientology of Washington, D.C., Inc. v. Bell,* 603 F.2d 945, 951 (D.C.Cir.1979). In national security cases, a district court exercises a wise discretion when it limits the number of documents it reviews in camera. This has two clear benefits. First, it makes it less likely that sensitive information will be disclosed. Second, if there is an unauthorized disclosure, having reduced the number of people with access to the information makes it easier to pinpoint the source of the leak. It was not an abuse of discretion for the court to have declined to conduct in camera review.

### B. Issue 2—Document B–19

■ Appellant's second major claim involves Document B–19. Document B–19 is an e-mail note of less than a single page concerning "Saudi Arms." The entire document has been released except for approximately three and a half lines. The Third Van Tassel Declaration explains that these lines need to be withheld because "[f]irst, [they] would reveal a comprehensive picture of Saudi missile forces ... [and][s]econd this information was provided by the Saudi Arabian govern-

ment with an expectation of confidentiality." Third Van Tassel Decl. at ¶ 24.

The district court initially ordered in camera review of Document B–19. It did so because the government's justification for redaction was seemingly inconsistent with the portions of the document that the government had released. JA at 69–70. The released portions suggested that the redacted lines concerned only American missile sales to the Saudis, rather than a comprehensive picture of the Saudi defense system, and that the information had been provided by the American government, rather than that of Saudi Arabia. JA at 266.

After in camera review of both the document and an in camera affidavit, the district court approved the redaction on the same grounds that it initially found contradictory. JA at 98–99. Armstrong now claims that the district court erred both in approving the redaction and in failing to justify its use of the in camera affidavit.

We reject Armstrong's contention that the district court erred by accepting this explanation. · First, the government is correct that the rationale given for exemption is not necessarily inconsistent with the released portions of the document. Second, even if the explanation were clearly inconsistent, the district court here conducted in camera review and declared itself satisfied that the redacted segment was appropriately withheld. Appellant has cited to no authority holding that a district court cannot accept after in camera review an explanation it had originally found unsatisfactory. Neither has he advanced any compelling reason why we should create such law today.

■ Armstrong's arguments regarding the in camera affidavit are stronger. Whereas the use of in camera review is generally encouraged, the use of in camera affidavits has generally been disfavored. Case law in this Circuit is clear that when a district court uses an in camera affidavit, it must both make its reasons for doing so clear and make as much as possible of the in camera submission available to the opposing party. *Lykins v. United States Department of Justice,* 725 F.2d 1455, 1465 (D.C.Cir.1984). These pro-

cedures ensure that the use of such affidavits has the smallest possible negative impact on the effective functioning of the adversarial system. *Id.* In camera affidavits are used more frequently in national security cases, but there is no reason to think that district court judges in national security cases are freed from the requirements imposed by *Lykins*. In this case the district court judge failed to explain why the use of an in camera affidavit was appropriate and why none of that affidavit could be shared with appellant. In the absence of these explanations, the use of the in camera affidavit arguably was error.

While the district court may have erred by not explaining its reasons for using an in camera affidavit and not releasing as much as possible of that affidavit to the other side, we hold that any such error was harmless. The facts here are far different from those in *Lykins*. In *Lykins* the court decided that a document was properly withheld based almost exclusively on the in camera affidavit. The public description of the document made no findings as to segregability, did not mention any exemption in particular, and did not discuss the length of the document or how and why it was produced. *Id.* at 1464. In the instant case, by contrast, the government released all but three and a half lines of the document and explained why it could not release the rest. In this case the government's failure to explain why it chose to use an in camera affidavit and its failure to release as much as possible of the document to the other side did not make "it impossible for the adversary system to function effectively in the District Court." *Id.* at 1465. By *Lykins'* own terms, then, any error in this ruling was harmless.[2]

### C. Issue 3—Names of the FBI Agents

■ The final contested issue in this appeal involves the government's decision to withhold the names of FBI agents below a certain grade who participated in meetings at the White House. It did so in a manner that suggests that it has adopted a categorical rule that the names of these agents will always be exempt from disclosure pursuant to Exemption 6. The district court accepted this categorical rule. We hold that it did so without demanding or providing an adequate explanation for why these names are always exempt from disclosure.

Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 cases require "a balancing of the individual's right of privacy against the preservation of the basic purpose of [FOIA] to open agency action to the light of public scrutiny." *Department of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 496, 114 S.Ct. 1006, 1013, 127 L.Ed.2d 325 (1994) (quoting *Department of Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976) (internal quotations omitted)).

Appellant contends that the FBI agents have no privacy interest in the release of their names and that release of the names would open agency action to the light of public scrutiny. Appellees predictably argue the opposite.

The district court accepted the government's position that under *Baez v. Department of Justice*, 647 F.2d 1328, 1339 (D.C.Cir.1980), FBI agents always have a privacy interest in the disclosure of their names. Dist. Ct. Op. at 28. While it may be true that *Baez* recognized some minimal privacy interest for all FBI agents, it was insufficient for the district court to have stopped its analysis at that point.

The scope of a privacy interest under Exemption 6 will always be dependent on the context in which it has been asserted. Reliance on an Exemption 7(c) case such as *Baez* is therefore not wholly adequate. Exemption 7(c) cases by definition always involve law enforcement. 5 U.S.C. § 552(b)(7)(C) ("[The disclosure requirement does] not apply to

---

**2.** We note that this Circuit has recently decided, in an appeal arising from this case, that the NSC is not an agency and therefore not subject to FOIA's disclosure requirements. *Armstrong v. Executive Office of the President*, 90 F.3d 553 (D.C.Cir.1996) (petition for rehearing in banc pending). We leave it to the district court to determine in the first instance the relevance of that holding to this case.

matters that are ... records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy...."). Exemption 6 claims, by contrast, can be made for information pertaining to a wide range of activities. For each of these categories of information, the privacy interest implicated may be very different. This is why a categorical rule forbidding disclosure of the names of lower-level FBI agents in all activities is invalid. The privacy interest at stake may vary depending on the context in which it is asserted.

Take for example a gathering of FBI agents who are discussing counter-intelligence operations in a hostile country. Disclosure of the names of these agents would implicate an important privacy interest because release of the names could provide information to the target country and put the agents in danger. In this context a categorical rule in favor of nondisclosure might be appropriate. Compare this context to the situation suggested at oral argument, in which a number of FBI agents have gathered at the White House to discuss recreational activities for the White House staff. Here there is at most a minimal privacy interest involved, so a correspondingly weaker public interest could warrant disclosure.

On remand, the government may be able to defend some categorical rule, but to do so it must at least supply some convincing reason why no matter what the context, FBI agents below a certain grade have a privacy interest that trumps any possible public interest advanced by disclosure. This, at a minimum, is required by Exemption 6.[3]

### D. Issue 4—The OSTP Document

 The government originally claimed that a memorandum generated by the Office of Science and Technology Policy was exempt from disclosure under Exemption 3. The district court agreed with the government. Appellant sought review.

Sometime after the filing of the appellant's initial brief the government released the document in question. Both parties contend that this release moots the question of the validity of the original exemption claim. We agree. *Crooker v. United States State Department*, 628 F.2d 9, 10 (D.C.Cir.1980) (per curiam). Appellant argues that we should vacate the district court's ruling on the issue. We agree with this as well. *United States v. Munsingwear*, 340 U.S. 36, 40, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950).

### III. CONCLUSION

We therefore affirm the district court on the first two issues, remand for clarification as to the third, and vacate the opinion as to the fourth.

WALD, Circuit Judge, dissenting in regard to Document B–2:

I believe that the government has failed to adequately explain why Document B–2 cannot be segregated further, and therefore would remand for the district court either to order the government to offer a more detailed explanation for why no additional portions can be segregated and released or to conduct an *in camera* review of this document. As the majority indicates, Document B–2 is a six page note. Only the first page, which simply lists the sender, recipients and subject line of the document, has been released. The description of Document B–2 in both the *Vaughn* index and the Third Van Tassel Declaration suggests that it could be divided into two relatively discrete parts, one containing a "lengthy analysis of the situation in Libya" and the other "an assessment of the future plans of the Libyan government, and possible United States responses." Joint Appendix ("J.A.") 186, 229. The Third

---

**3.** Note that this issue has implications beyond the instant case. If the FBI can establish a categorical rule against disclosure of the names of its lower-level agents, then it would seem to follow that a similar rule can be imposed by other law enforcement agencies such as the ATF or the DEA. All of these agencies, obviously,

would be required to justify any Exemption 6 non-disclosure policy under the privacy interest versus public interest grounds established by *Department of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994).

Van Tassel Declaration states that there are no portions that could be segregated and released because the document "consists of an extensive review of numerous intelligence cables, revealing one piece of specific intelligence after another." J.A. 229. Similarly, the *Vaughn* index claims that the document is exempt from release because disclosure "would reveal intelligence sources and methods." J.A. 186; *see also* Exec. Order 12,356 § 1.3(a)(4), 47 Fed.Reg. 14,874 (1982) (information is considered classified and exempt from release under 5 U.S.C. § 552(b)(1) (1994) if it concerns "intelligence activities . . . or intelligence sources or methods"). The government does not explain, however, what a "specific piece of intelligence" is or why releasing these pieces of information would reveal intelligence sources and methods. For example, the government does not contend, as it did in regard to Document B–3, that the information by itself will reveal an intelligence source. J.A. 229. In addition, I am troubled by the fact that the government made no effort to correlate its claimed exemptions to particular paragraphs or sections of the document or to estimate what percentage of the withheld material is in fact exempt. *See, e.g., Schiller v. NLRB,* 964 F.2d 1205, 1210 (D.C.Cir.1992) (government must supply a "'relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and *correlating those claims with the particular part of a withheld document to which they apply'"*) (quoting *King v. United States Dep't of Justice,* 830 F.2d 210, 224 (D.C.Cir.1987)) (emphasis added in *Schiller*); *Mead Data Central, Inc. v. United States Dep't of the Air Force,* 566 F.2d 242, 261 (D.C.Cir.1977) (government should describe "what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document"). Such an attempt to correlate exemptions with particular passages is not "extraneous," Majority opinion at 579, when the withheld portion is of some length—here five pages—and no detailed description of the document is offered.