**Terry ANDERSON, Plaintiff,**

v.

**CENTRAL INTELLIGENCE AGENCY, et al., Defendants.**

**No. Civ.A. 94–2032 JR.**

United States District Court, District of Columbia.

Aug. 25, 1999.

---

Stuart H. Newberger, Javier Guzman, Crowell & Moring, Washington, DC, for plaintiff.

Marina Utgoff Braswell, Assistant U.S. Attorney, Washington, DC, for defendants.

## MEMORANDUM

ROBERTSON, District Judge.

Before the court is the CIA's *Vaughn* index and motion for summary judgment, presenting for decision the last remaining merits issues in Terry Anderson's five-year old FOIA litigation with ten government departments. Anderson challenges only two aspects of the CIA's final response [1]: (i) its failure or refusal to segregate exempt material from non-exempt, releasable material; and (ii) its *Vaughn* index description of certain material as "non-responsive." This memorandum explains the reasons for the accompanying order, which resolves both issues in favor of the CIA and grants the CIA motion for summary judgment.

Plaintiff was kidnapped in Lebanon in 1985 and held hostage by members of the Islamic Jihad for almost seven years. After his release from captivity, he made FOIA requests to a number of government agencies for documents relating to his case. His FOIA requests to the CIA, made on June 3, 1992, June 23, 1992, and July 9, 1992, sought documents containing information about himself, the Islamic Jihad, ten alleged members of the Islamic Jihad, and former hostages Thomas M. Sutherland and Brian Keenan. The CIA made several releases of information, ultimately releasing 51 unredacted documents and 581 redacted documents and withholding 220 documents.

The CIA filed a *Vaughn* index on December 15, 1997, and moved for summary judgment on January 27, 1998. After a

---

1. Anderson has not challenged the CIA's assertion of FOIA Exemptions 1 and 3 in refusing to confirm or deny the existence of certain documents and in refusing to provide the number or list of certain documents. The CIA motion as to those issues will be granted as conceded under Local Rule 108(h).

number of extensions, plaintiff opposed this motion on August 13, 1998, objecting not only to the CIA's alleged failure to segregate documents adequately, but also to the manner in which the CIA processed the request. Plaintiff asserted that the CIA should have processed non-responsive material contained in documents with other responsive information which was released to plaintiff. The CIA agreed to reprocess the non-responsive material. On July 30, 1999, the CIA filed its reply to plaintiff's opposition to the CIA's motion summary judgment.

The CIA has withheld (or redacted) hundreds of documents on the grounds that their release would threaten national security, invoking one or both of FOIA Exemption 1, covering information designated in an Executive Order to be "kept secret in the interest of national defense or foreign policy," and FOIA Exemption 3, covering information exempted from disclosure by statute, in this instance, the National Security Act of 1947 and the CIA Act of 1949.

### (i.) Segregability of classified documents

■ Anderson's arguments for further segregation of CIA documents were considered, and rejected, in connection with the Department of State's motion for summary judgment. Memorandum Opinion of March 31, 1999, at 4–7. One of these arguments is that the "sheer volume" of withheld material suggests a failure to segregate (Opp.Mem. at 13). The duty to segregate does not depend on the volume of documents, however. It depends upon whether "government affidavits ... show with reasonable specificity why the documents cannot be further segregated." *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578 (D.C.Cir.1996) (citation and quotation omitted).

■ Anderson next argues that the CIA's affidavits do not meet the "reasonable specificity" standard. He points to the CIA's *Vaughn* index description of Document 592 as "an extreme example of the CIA's unwillingness to comply with its legal duty to segregate information within documents" (Pl.Opp. at 15). The *Vaughn* index identifies the document as top secret, 46 pages in length, dated September 19, 1986, and states:

> This memo discusses the status of the U.S. hostages in Lebanon and has been denied in its entirety as there are no meaningful, segregable, non-exempt portions that can be released to plaintiff. Disclosure of this information would identify information from a foreign liaison service/relationship, information which could identify the source, information pertaining to an intelligence source, intelligence methods, location of CIA overseas installations, and internal organization data.

I find that that language does indeed "show with reasonable specificity why the documents cannot be further segregated." I make the same finding with respect to a series of 26 documents,[2] mostly from Charles Allen to Vice Admiral John Poindexter, as to which Anderson asserts that the CIA's failure specifically to address segregability suggests that segregability is indeed possible. The cases plaintiff cites for this proposition, *Krikorian v. Department of State*, 984 F.2d 461, 467 (D.C.Cir. 1993), and *Kimberlin v. Department of Justice*, 139 F.3d 944 (D.C.Cir.1998), are inapposite. In those cases, the district courts made no findings as to segregability. I have made such a finding, and I specifically decline—especially in the highly classified context of this case—to insist upon a special form of words or to infer from the absence of the word "segregable" that segregability was possible.

■ Anderson's argument about segregation extends even to documents the CIA produced in redacted form, *i.e.*, documents that were segregated, but (Anderson asserts) not well enough. He bases this claim on what he asserts is inconsistent

**2.** Documents 568, 569, 573, 577, 580–586, 588–593, 595–599, 601–603, 699.

redaction between identical documents, pointing out, correctly, that two words redacted from Documents 610 were not redacted from Document 604. Anderson is not correct, however, in his assertion that the two documents are identical, or that Document 610 is missing an entire page that was left intact in Document 604. In any event, this two-word error has been cured by the re-release of Document 610. *See* Pl.Rep.Mem.Exh. A. I cannot find generalized carelessness on the basis of this minor inconsistency, nor can I conclude that "the CIA has redacted information unnecessarily." Pl.Opp. at 24.

(ii.) *"Nonresponsive" material*

Anderson asserts that the CIA mischaracterized as "non-responsive" documents that were actually within the scope of plaintiff's request. The CIA admits that it removed, or "scoped", what it designated as non-responsive information. McNair Decl. II, Oct. 30, 1998, ¶ 2. After receiving plaintiff's opposition, however, the CIA reprocessed 302 of the scoped documents. The result of the reprocessing, according to the CIA, was that "[a]ll but six of these documents were scoped as stated in the *Vaughn* index, and new Vaughn entrys [sic] have been re-released to plaintiff to correct the misstatement regarding the six documents that were scoped." Pl Rep.Mem. at 13, n. 6.

The CIA's affidavits and representations on this point are sufficient. Anderson has made no suggestion or showing of bad faith, nor has he presented any reason why I should not adhere to the ordinary rule that affidavits submitted by an agency are "accorded a presumption of good faith." *SafeCard Servs. v. SEC,* 926 F.2d 1197, 1200 (D.C.Cir.1991).

Anderson's other arguments have been considered and rejected. An appropriate order accompanies this memorandum.

### ORDER

Upon a review of the record and for the reasons stated in an accompanying memorandum, it is this 24th day of August 1999 ORDERED that defendant CIA's motion for summary judgment [# 73] is **granted.**