C. Glomar and Exemption 7(D)
In addition to the aforementioned largely procedural issues, Plaintiffs also maintain that the Court's decision upholding the agency's Glomar response based on Exemption 7(D) is substantively wrong. In so arguing, they make many of the same points they raised the first time around. The Court runs through them again, clarifying why the agency's response was legally satisfactory.
1. Official Acknowledgement
The Montgomerys root their first set of objections in a species of waiver *82 doctrine known as "official acknowledgement." See Mot. at 9-12. Under that doctrine, an agency may be barred from asserting Glomar or a FOIA exemption if doing so would be irreconcilable with its previous official statements. See Wolf v. CIA, 473 F.3d 370, 378 (D.C. Cir. 2007). Plaintiffs argue that this is the case here, as the IRS's past statements have waived its right to assert both Glomar and Exemption 7(D). Take the Glomar-waiver argument first. An agency waives Glomar under this doctrine when it has officially acknowledged the existence (or nonexistence) of responsive documents. "[T]o overcome an agency's Glomar response when relying on an official acknowledgement, 'the requesting plaintiff must pinpoint an agency record that both matches the plaintiff's request and has been publicly and officially acknowledged by the agency.' " James Madison Project v. Dep't of Justice, 302 F.Supp.3d 12, 21 (D.D.C. 2018) (quoting Moore v. CIA, 666 F.3d 1330, 1333 (D.C. Cir. 2011) ).
As the Court has explained before, Plaintiffs have not met this standard. The IRS's prior statements about the absence of a confidential informant in the Montgomerys' tax case, discussed in greater depth below, do not mean there were no responsive documents. See Montgomery, 330 F.Supp.3d at 168-69. Neither did the Service's clerical error during the administrative process - apparently recognizing the existence of documents - constitute an official acknowledgement. Id. at 169 ; see also Mobley v. CIA, 806 F.3d 568, 584 (D.C. Cir. 2015) (holding that "simple clerical mistake in FOIA processing" is not official acknowledgement). The agency's general ability to assert Glomar therefore remains intact.
That leaves the Montgomerys' second official-acknowledgement argument: that the agency has officially and publicly acknowledged the information it now seeks to protect under Exemption 7(D), thereby rendering that Exemption inapplicable. "A three-part test determines whether an item is officially acknowledged: (1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure." Mobley, 806 F.3d at 583 (quoting Fitzgibbon v. CIA, 911 F.2d 755, 765 (D.C. Cir. 1990) ) (internal quotation marks omitted). The plaintiff bears the initial burden of showing that "the specific information" is already "in the public domain by official disclosure." Wolf, 473 F.3d at 378.
Plaintiffs maintain that the IRS has officially acknowledged that there was no confidential informant in this case, so it cannot assert an exemption whose sole purpose is to protect against the disclosure of the identity of a confidential source. Once again, the Court finds that Plaintiffs have not borne their burden. As to the first and second prongs, the Court has explained why the information requested sweeps more broadly than, and does not match, the information previously disclosed. To wit, the whistleblower forms requested may contain substantial information about any persons who have provided information to the IRS or any details those persons may have provided. Of course, the general statements by the IRS in prior litigation that that there was no informant do not match such information and thus are not official acknowledgements of that information.
Plaintiffs rejoin that such information, if it exists, could not implicate Exemption 7(D). See Mot. at 9-10. (To the extent the Court did not directly address this argument in its prior Opinion, id., it does so *83 now.) But they are wrong. The scattered statements in the previous litigation do not rule out the presence of Exemption 7(D)-protected information in the requested records. A brief refresher: Several IRS officials in previous litigation involving partnerships managed by Plaintiff Thomas Montgomery stated that "there had been no whistleblower" and that "there was not ... an informant who put the Internal Revenue Service on notice" of certain tax conduct. See ECF No. 38, Attach. 2 (Plaintiffs' Statement of Undisputed Material Facts), ¶¶ 34-38. The context of those statements is critical. A number were specific to particular partnerships; several did not address whether there might have been an informant as to Plaintiff Beth Montgomery. See, e.g. ECF No. 13, Attach. 9 (Plaintiffs' Motion for Disclosure in Southgate Litigation) at ECF pp. 25-26; ECF No. 13, Attach. 11 (Gee Deposition and Thurber Testimony) at ECF pp. 5, 26-28. Some were also limited in time - e.g. , "And we did not have any informants involved in any of the returns we classified during that week of December, 2005." Thurber Testimony at ECF p. 28.
Plaintiffs have not shown that these statements mean there could be no confidential source whose identity would be compromised if responsive documents were revealed. There may have been such a source during a different time period from that addressed in the statements, yet still within the eight-year period subject to Plaintiffs' requests. See Compl., ¶ 16. Or there may have been a source reporting on conduct or persons outside the scope of that litigation. Or it is possible that someone might be a confidential source within the meaning of Exemption 7(D) but not have been considered an informant or whistleblower in the investigations that were subject of prior litigation - perhaps because the IRS did not rely upon their information. See Montgomery, 330 F.Supp.3d at 170-71. Indeed, Thomas Montgomery himself argued that the Government's prior statements left open the question of whether there was a confidential informant. See Southgate Motion for Disclosure at ECF pp. 25-30; see also ECF No. 19 (Opp. to First MSJ), Attach. 1 (Plaintiffs' Statement of Disputed Material facts) at ECF p. 6 (describing IRS statements on informant issue as "immaterial, incomplete, inaccurate, and misleading"). All those possibilities, which Plaintiffs have done little to dispel, demonstrate the Montgomerys have not met their burden of showing that "the specific information" subject to their requests and protected by Exemption 7(D) is "in the public domain by official disclosure." See Wolf, 473 F.3d at 378.
2. Estoppel
Plaintiffs' next argument was that a prior judicial decision collaterally estopped the IRS from now asserting that there might have been a confidential source. Recall that the district court in Bemont Investments, LLC v. United States, 2010 WL 3057437 (E.D. Tex. Aug. 2, 2010), aff'd in part and rev'd in part, 679 F.3d 339 (5th Cir. 2012), stated that "[t]here was no informant [t]here." Id. at *13. This one fails for the same reason the official-acknowledgement argument did: The issue the Bemont court decided does not resolve the question of whether there are responsive records protected by Exemption 7(D). In particular, that court's remark was focused on that litigation during that time period. So even if the court's understanding of the terms "informant" or "whistleblower" mapped onto Exemption 7(D)'s term "confidential source," which is far from clear, its determination did not address the field of possibilities of such sources as applied to Thomas and Beth Montgomery.
*84 3. Exemption 7(D)
The Montgomerys last contend that the Court's decision is contrary to the terms of FOIA Exemption 7(D), which applies only to "records or information compiled for law enforcement purposes" that "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D). They maintain that the decision expands that exemption to persons who provided information without assurances of confidentiality, who may not even be "sources," and whose identities are not at risk of disclosure. See Mot. at 11-15. But the Opinion did nothing of the sort.
Take the issue of confidentiality first. For Exemption 7(D) to apply, the source must have "provided information based upon an express grant of confidentiality or 'in circumstances from which such an assurance could reasonably be inferred.' " Montgomery, 330 F.Supp.3d at 170 (quoting U.S. Dep't of Justice v. Landano, 508 U.S. 165, 172, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993) ). As the Court explained, in the particular circumstances of the Glomar response here, the IRS met this standard. It explained publicly why the records, if they exist, would reveal the identity of a source given either an express or implied grant of confidentiality. See Second MSJ, Attach. 6 (Declaration of Amy Mielke), ¶¶ 8-10. Then it submitted information in camera for the Court to confirm that, if responsive documents existed, they in fact implicated such a confidential source. Further explanation of the assurances given to a source, if any, would realize the harm the agency seeks to avoid because it would reveal whether any such source existed. See Montgomery, 330 F.Supp.3d at 170. Contrary to Plaintiffs' assertion, the IRS thus fully complied with Roth's requirement that "an agency 'publicly explain[ ] to the extent it can why it has concluded that certain sources provided information under an express or implied assurance of confidentiality.' " Mot. at 14 (quoting Roth, 642 F.3d at 1185 ).
What about Plaintiffs' argument that Exemption 7(D) does not cover "attempted" sources? See Mot. at 11. The Court's Opinion, for starters, did not depend on the exemption reaching persons who, in Plaintiffs' parlance, merely attempt to become confidential sources. As explained above, notwithstanding the Government's prior statements about informants, any responsive records may well contain information about what Plaintiffs refer to as actual confidential sources. See supra Section III.C.1. The Court notes, however, that the terms of Exemption 7(D) comfortably include persons who provided information to the Government under an assurance of confidentiality where such information was never actually relied upon in a particular investigation or prosecution. To wit, the exemption protects the identity of a "source," a term ordinarily understood to include persons who merely provide information. See American Heritage Dictionary 1674 (5th ed. 2011) (defining source as "one ... that supplies information"). The upshot is that, either way you understand the exemption, the whistleblower forms Plaintiffs request, if they exist, are likely to contain information from and about protected sources.
The Montgomerys last insist that Exemption 7(D) only protects the identities of confidential sources and thus cannot be invoked to shield from disclosure the existence of a confidential source. See Mot. at 12-14. The Court agrees with the former but disagrees with the latter. As explained, there are some circumstances in which the divulging of the existence of a confidential source will also reveal that source's identity. See Montgomery, 330 F.Supp.3d at 170-71. Those circumstances, as the IRS explains, obtain here. See *85 Mielke Decl., ¶ 13. The Court's decision thus does not broaden the scope of Exemption 7(D) - it respects it and the harms it is intended to prevent. See FBI v. Abramson, 456 U.S. 615, 630, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982) (emphasizing that exemption aims to prevent "potential disruption in the flow of information to law enforcement agencies by individuals who might be deterred from speaking because of the prospect of disclosure").
IV. Conclusion
For the foregoing reasons, the Court will deny the Motion for Reconsideration. A separate Order consistent with this Opinion will issue this day.