# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 22, 2022           Decided July 19, 2022

No. 21-5168

THOMAS A. MONTGOMERY AND BETH W. MONTGOMERY,
APPELLANTS

v.

INTERNAL REVENUE SERVICE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-00918)

———

*Kim Marie Boylan* argued the cause for appellants. With her on the briefs were *Nicholas L. Wilkins* and *Christina M. Culver*.

*Norah E. Bringer*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief was *Michael J. Haungs*, Attorney.

Before: HENDERSON and WALKER, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge*
SENTELLE.

SENTELLE, *Senior Circuit Judge*:  In the district court,
Appellants Thomas and Beth Montgomery brought suit against
the Internal Revenue Service for its responses to the
Montgomerys' twelve Freedom of Information Act ("FOIA")
requests. The district court ultimately granted summary
judgment to the IRS on all issues.  The Montgomerys now
appeal the district court's May 19, 2021, order awarding
summary judgment to the IRS, as well as seven opinions and
orders supporting the May 19 order.   These include
*Montgomery v. Internal Revenue Serv.*, 330 F. Supp. 3d 161
(D.D.C. 2018); 356 F. Supp. 3d 74 (D.D.C. 2019); No. CV 17-
918, 2019 WL 2930038 (D.D.C. July 8, 2019); No. CV 17-918,
2020 WL 1451597 (D.D.C. Mar. 25, 2020); No. CV 17-918,
2020 WL 2994334 (D.D.C. June 4, 2020); 514 F. Supp. 3d 125
(D.D.C. 2021); and No. CV 17-918, ECF No. 116 (D.D.C. May
12, 2021).  For the reasons explained below, we affirm the
district court.

## I.  Background

This lawsuit represents the most recent episode in an
ongoing legal struggle between the Montgomerys and the IRS
in a series of suits dating back over a decade.

### a.  The Underlying Tax Suits

In the early 2000s, husband and wife Appellants
Thomas and Beth Montgomery, both accountants, undertook a
tax scheme to artificially inflate business losses on their
individual tax returns.  To this end, Thomas Montgomery
participated in establishing sham partnerships he then used as

tax shelters to report losses of over $1 billion. The IRS subsequently uncovered the scheme and retroactively disallowed the losses on the Montgomerys' individual tax returns in a series of adjustments.

In protest, the Montgomerys and associated partnerships brought two suits in federal court seeking readjustment of the IRS's adjustments, *Southgate Master Fund, L.L.C. ex rel. Montgomery Cap. Advisors, LLC v. United States*, 659 F.3d 466 (5th Cir. 2011) ("*Southgate*") and *Bemont Invs., L.L.C. ex rel. Tax Matters Partner v. United States*, 679 F.3d 339 (5th Cir. 2012), *abrogated on other grounds by United States v. Woods*, 571 U.S. 31 (2013) ("*Bemont*"). The Montgomerys ultimately emerged from these cases with a partial victory. Though holding most of the Montgomerys' partnership transactions were shams, the Fifth Circuit held that one of the transactions had a legitimate business purpose. *Southgate*, 659 F.3d at 481. In light of this, the Montgomerys and their partnerships then pursued thirteen separate lawsuits in the federal courts for various tax refunds associated with the readjustments assessed them. Before this litigation finalized, however, the Montgomerys and the IRS entered a global settlement agreement to resolve all outstanding differences in 2014.

b. FOIA Requests

With the underlying tax matters resolved, the Montgomerys brought suit to discover how their tax schemes came to the attention of the IRS. To this end, in May 2016 they submitted twelve records requests to the IRS under the Freedom of Information Act, 5 U.S.C. § 552. The IRS subsequently grouped the Montgomerys' FOIA requests into two categories: (1) the first five requests regarding certain whistleblower forms, including award applications ("Requests

1–5"); and (2) the second seven requests involving the IRS's communications with any third parties about the Montgomerys' taxes ("Requests 6–12").

The IRS first responded to both groups of records requests by providing no responsive documents. For Requests 1–5, the IRS cited FOIA Exemption 7(D) "exempt[ing] the disclosure of records or information compiled for law enforcement purposes to the extent that their release could disclose the identity of a confidential source." JA51 (citing 5 U.S.C. § 552(b)(7)(D)). For Requests 6–12, the IRS searched its files and first found no responsive records. The Montgomerys filed an administrative appeal with the IRS, which it subsequently denied via a Final Appeal Response Letter dated September 23, 2016.

c. District Court

The Montgomerys then brought suit in the United States District Court for the District of Columbia alleging (1) the IRS wrongfully withheld documents pertaining to Requests 1–5; (2) the IRS wrongfully withheld documents pertaining to Requests 6–12; and (3) the IRS violated the Administrative Procedure Act in doing so.

In its Answer, the IRS asserted a *Glomar* Response for Requests 1–5. Named after a ship in a long-ago CIA secrets case, a *Glomar* Response refers to an agency's refusal to either confirm or deny the existence of the records requested. *See Phillippi v. C.I.A.*, 546 F.2d 1009, 1010 (D.C. Cir. 1976). The IRS averred that answering the Montgomerys' requests "could violate protections from disclosure under the exemptions contained in [the Freedom of Information Act]." JA68. Agencies are permitted to use a *Glomar* Response when an acknowledgement—or not—of certain records would reveal

the very information the agency seeks to protect. *Bartko v. United States Dep't of Just.*, 62 F. Supp. 3d 134, 141 (D.D.C. 2014). When using it to answer a FOIA request, an agency must tether its *Glomar* Response to at least one of the statutory FOIA exemptions. *See id.* (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)).

### i. *Requests 1–5*

The district court first considered and rejected the Montgomerys' procedural arguments that estoppel and the official acknowledgment doctrine precluded the IRS from asserting its *Glomar* Response. *Montgomery*, 330 F. Supp. 3d at 168–70. It then granted the IRS summary judgment on the issue. *Id.* at 173; *see also Montgomery*, 356 F. Supp. 3d at 78 (denying reconsideration of the issue). The district court relied on Exemption 7(D) in granting the IRS summary judgment. *Montgomery*, 330 F. Supp. 3d at 170. This exemption exempts from FOIA disclosure

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source . . . .

5 U.S.C. § 552(b)(7)(D). The district court was persuaded by the IRS's explanation that it asserted a *Glomar* Response for

all documents regarding its whistleblower program because a confirmation of the existence or absence of whistleblower documents in a particular case may lead a savvy requester to the very whistleblower himself. *Montgomery*, 330 F. Supp. 3d at 170–71.

### ii. *Requests 6–12*

The matter of Requests 6–12 was not resolved so quickly. The district court first ruled that the IRS's search for records responsive to Requests 6–12 was inadequate. *See Montgomery*, 330 F. Supp. 3d at 172 (denying summary judgment to IRS on adequacy of search with instructions to renew search); *Montgomery*, 2020 WL 1451597, at *5 (same); *Montgomery*, 514 F. Supp. 3d 125, 136 (D.D.C. 2021) (holding most of the IRS's search adequate with one exception and giving instructions to renew search resolving exception). After the district court required it to renew its search several times, the IRS eventually uncovered over 1,000 pages of documents responsive to Requests 6–12. *Montgomery*, 2020 WL 1451597, at *5. The district court then ultimately held the IRS had finally searched in all of the appropriate places, and its failure to locate certain documents the Montgomerys expected to find did not make the search inadequate. *Montgomery*, ECF No. 116, at *1.

### iii. *APA Review*

Finally, the Montgomerys argued that the IRS's policy to assert a *Glomar* Response for requests seeking whistleblower documents violated the Administrative Procedure Act because it constituted a rule without the APA requirements of notice and comment. The district court held that APA review remained unavailable to the Montgomerys because they could receive adequate relief under FOIA;

namely, the release of certain withheld documents. *Montgomery*, 330 F. Supp. 3d at 173.

The Montgomerys now appeal to this Court.

## II. Analysis

### a. Standard of Review

"We review *de novo* a district court's grant of summary judgment in favor of an agency which claims to have complied with FOIA." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 889 (D.C. Cir. 1995). We also review the district court's collateral estoppel and official acknowledgement determinations *de novo.* *Hall v. Clinton*, 285 F.3d 74, 80 (D.C. Cir. 2002) (collateral estoppel); *Protect Democracy Project, Inc. v. Nat'l Sec. Agency*, 10 F.4th 879, 884 (D.C. Cir. 2021) (official acknowledgement). However, the district court's decision regarding judicial estoppel requires abuse of discretion review. *Marshall v. Honeywell Tech. Sys. Inc.*, 828 F.3d 923, 928 (D.C. Cir. 2016).

### b. Procedural Arguments

The Montgomerys set forth three procedural arguments averring that the IRS is barred from asserting a *Glomar* Response to Requests 1–5: (1) collateral estoppel; (2) judicial estoppel; and (3) the official acknowledgment doctrine. The district court considered and rejected these arguments. *Montgomery*, 330 F. Supp. 3d at 168–70 (estoppel and official acknowledgment doctrine). We agree with the district court and explain why the Montgomerys' procedural arguments are unpersuasive. We examine each argument in turn.

### i. *Collateral Estoppel*

The Montgomerys first allege that the IRS is collaterally estopped from asserting a *Glomar* Response because it successfully argued in the two underlying tax cases of *Bemont* and *Southgate* that no informant existed. Because the *Glomar* Response requires at least the *possibility* of an informant, the Montgomerys argue that the IRS is collaterally estopped from now refusing to answer the Montgomerys' Requests 1–5 pertaining to whistleblower documents.

Collateral estoppel requires that (1) "the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case;" (2) "the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case;" and (3) "preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Martin v. Dep't of Just.*, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting *Yamaha Corp. of Amer. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)).  The Montgomerys fail to meet the first requirement of this test.

The issue of the *existence* of a confidential informant, decided by the previous Fifth Circuit cases of *Bemont* and *Southgate*, is not the same as the issue confronting us now; namely, whether the IRS possesses any *documents* pertaining to a confidential informant.  Indeed, the documents requested by the Montgomerys in Requests 1–5 include such items as award applications and reportable transaction forms.  *See* JA43–44.  As the IRS and the district court correctly point out, the IRS does not pay awards for every form submitted to it.  So, these documents may very well exist outside of the presence of an actual whistleblower. *Montgomery*, 330 F. Supp. 3d at 169.  Because *documents* pertaining to a potential whistleblower can

exist regardless of whether a *whistleblower himself* exists, the issue facing us now was not previously litigated in the Fifth Circuit. The IRS is not collaterally estopped from its *Glomar* Response.

### ii. *Judicial Estoppel*

The Montgomerys next assert that the IRS is judicially estopped from asserting its *Glomar* Response. Judicial estoppel "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting 18 Moore's Federal Practice § 134.30, p. 134–62 (3d ed. 2000)). The Montgomerys argue that the IRS benefitted from its argument to the Fifth Circuit that no informant existed, resulting in favorable evidentiary and statute of limitations rulings. The IRS cannot now, the Montgomerys assert, change its position that no informant exists.

As explained for the collateral estoppel issue above, the IRS has not changed its position on whether a confidential informant exists in this case. The IRS's *Glomar* Response to the existence of whistleblower *documents*, as requested by the Montgomerys in FOIA Requests 1–5, does not bear on its prior position in the Fifth Circuit cases regarding the existence of a *whistleblower*. Since the IRS's positions are not inconsistent, the IRS is not judicially estopped from its *Glomar* Response.

### iii. *Official Acknowledgment*

The Montgomerys finally assert two arguments regarding the official acknowledgment doctrine: (1) the IRS officially acknowledged that it did not have a confidential informant through its disclosures to the Fifth Circuit; and (2)

the IRS officially acknowledged in its Final Appeal Response Letter to the Montgomerys that "withheld material" existed with respect to Requests 1–5. We discuss both in turn.

The official acknowledgment doctrine holds that "when an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption with respect to that information." *Am. C.L. Union v. C.I.A.*, 710 F.3d 422, 426 (D.C. Cir. 2013). We use a three-part test to determine whether an agency has officially acknowledged otherwise-exempt information: (1) "the information requested must be as specific as the information previously released;" (2) "the information requested must match the information previously disclosed;" and (3) "the information requested must already have been made public through an official and documented disclosure." *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765 (D.C. Cir. 1990).

As to the Montgomerys' first assertion, for the reasons stated exhaustively above, the information requested by the Montgomerys does not match the information previously released by the IRS and so fails the official acknowledgment test. Namely, Requests 1–5 seek whistleblower documents, while the IRS previously disclosed the non-existence of a whistleblower himself. These two pieces of information differ, a fact even acknowledged by the Montgomerys in their opening brief. *See* Appellants Br. 37 ("The existence of responsive records is a distinct issue, separate from the existence of a confidential source.").

The Montgomerys cite *Sea Shepherd Conservation Soc'y v. Internal Revenue Serv.*, 208 F. Supp. 3d 58 (D.D.C. 2016), for the proposition that once "the existence or non-existence of an informant [is] already public record, the IRS [cannot] establish 'why the disclosure of the *fact of the*

*existence or non-existence* of any records—as opposed to the records themselves—would cause harm to the interests protected by the FOIA exemptions [(3 and 7(D))] cited.'" Appellants Br. 35 (quoting *Sea Shepherd Conservation Soc'y*, 208 F. Supp. 3d at 90 (emphasis in original)). However, the Montgomerys fail to appreciate *Sea Shepherd*'s narrow scope, which cautions that "[t]his opinion is not meant to and does not establish a general principle that the IRS may never issue a *Glomar* response for records from its Whistleblower Office." *Sea Shepherd*, 208 F. Supp. 3d at 90. Rather, the *Sea Shepherd* Court clarified that its decision was based "on the unique circumstances presented in [that] case, in which the fact of the existence of whistleblower *records* within the agency had already been made public." *Id.* (emphasis added).

No such unique circumstance is present in this case. The IRS did not officially acknowledge in any prior proceeding that it did, or did not, possess *records* pertaining to potential informants, the subject of Requests 1–5. The official acknowledgment doctrine therefore does not apply to the Montgomerys' first argument.

The Montgomerys' second argument similarly fails for the reasons stated by the district court. In its Final Appeal Response Letter to the Montgomerys, the IRS stated that "[t]he withheld material contains information which could reasonably be expected to directly or indirectly disclose the identity of confidential sources in the course of a criminal investigation." JA65. The Montgomerys aver that the IRS's reference to "withheld material" constitutes an official acknowledgment that such material exists. This is incorrect. As the Appeals Officer who reviewed the Montgomerys' FOIA requests explained to the district court, the standard "withheld material" language contained in the Letter was mistaken. We agree with the district court that "[i]t would be draconian to penalize the

Government in a sensitive matter concerning a potential informant by refusing to permit some leeway for an honest mistake." *Montgomery*, 330 F. Supp. 3d at 169. Moreover, we further agree with the district court that the IRS's vague reference to "withheld material" does not match the information requested by the Montgomerys under the official acknowledgement doctrine's second requirement, thus also failing that test. *See id.* at 169–70.

For the reasons stated above, all of the Montgomerys' procedural arguments fail. We move now to the merits of this case.

### c. Merits

#### i. *Requests 1–5*

The Montgomerys argue that the IRS's *Glomar* Response is contrary to law. They allege that the Response violates FOIA's existing statutory scheme, runs contrary to Supreme Court and this Court's precedent, and improperly involves the use of *ex parte* declarations. We address each in turn.

##### 1. FOIA Statutory Scheme

The Montgomerys first aver that FOIA Exemption 7(D), the exemption on which the IRS and the district court relied, protects only the *identity* of a whistleblower and the *information* furnished by a whistleblower, not the *existence* of a whistleblower.

We disagree. Exemption 7(D) permits the IRS to withhold information that "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C.

§ 552(b)(7)(D). As we have stated before, Congress intended 7(D) "to provide a broad exemption for law enforcement" to allow for "agencies to obtain, and to maintain, confidential sources, as well as to guard the flow of information to these agencies." *Parker v. Dep't of Just.*, 934 F.2d 375, 380 (D.C. Cir. 1991). The IRS is in fact required by Treasury Regulations to "use its best efforts to protect the identity of whistleblowers." 26 C.F.R. § 301.7623-1(e).

To this end, the IRS gives a *Glomar* Response to FOIA requests seeking documents pertaining to whistleblowers, refusing to either confirm or deny the existence of such records. This policy makes sense. If the IRS only asserts *Glomar* when whistleblower records exist, and gives a negative answer when no records exist, savvy requesters would both (1) recognize that a *Glomar* Response indicates the positive existence of whistleblower documents; and (2) may well be able to deduce the identity of a potential whistleblower himself, the very information the IRS is required to protect. This is especially true when the pool of potential whistleblowers is very small, leading a revenge-seeking requester to narrow down the informant with relative ease. Far from *violating* FOIA's statutory scheme, the IRS's *Glomar* Response to FOIA requests for whistleblower documents *aligns* with the purpose of Exemption 7(D) and the duties of the IRS to protect whistleblower identities. The Montgomerys make several more arguments on this point, none of which merit discussion.

## 2. Relevant Precedent

Nor does the IRS's *Glomar* Response run afoul of Supreme Court or this Court's precedent, as the Montgomerys next argue. The Montgomerys specifically aver that the IRS relied on a presumption of confidentiality to assert its 7(D) Exemption, a practice prohibited by the Supreme Court case of

*Dep't of Justice v. Landano*. 508 U.S. 165 (1993) ("*Landano*"). The Montgomerys also cite three cases from this Circuit, including *Roth v. Dep't of Justice*, 642 F.3d 1161 (D.C. Cir. 2011) ("*Roth*"), *Lykins v. Dep't of Justice*, 725 F.2d 1455 (D.C. Cir. 1984) ("*Lykins*"), and *Garza v. U.S. Marshals Svc.*, 2020 WL 768221 (D.C. Cir. Jan. 22, 2020) ("*Garza*") for their proposition that the IRS must only withhold small portions of requested records that could identify a whistleblower under Exemption 7(D) and publicly release the rest.

The abovementioned precedent does not mandate such a result, and the district court's decisions in this case align with precedent. The Montgomerys are correct that *Landano* prohibits a presumption of confidentiality for informants. *See Landano*, 508 U.S. at 166. Instead, under this Court's precedent in *Roth*, an agency relying on confidential sources should "publicly explain[] to the extent it can why it has concluded that certain sources provided information under an express or implied assurance of confidentiality." *Roth*, 642 F.3d at 1185. However, this Court does not require the explanation to "'giv[e] away the information [the agency] is trying to withhold,'" as the Montgomerys seem to suggest. *Id.* (quoting *Lykins*, 725 F.2d at 1463–64). Instead, *Roth* and *Lykins* "recognize[] 'that there are occasions when extensive public justification would threaten to reveal the very information for which a FOIA exemption is claimed.'" *Roth*, 642 F.3d at 1185 (quoting *Lykins*, 725 F.2d at 1463). In these situations, this Court permits an agency relying on Exemption 7(D) to "supplement its explanation by making the documents available for *in camera* review." *Roth*, 642 F.3d at 1185. In this way, the court balances the FOIA requester's interest in the testing of an agency's claims with the purpose of Exemption 7(D) in keeping some information non-public. *See id.*

In this case, the district court directly followed this precedent. As explained above, revealing the existence of any whistleblower documents may have "giv[en] away the information [the IRS was] trying to withhold," defeating the entire purpose of *Glomar*. Recognizing this, the district court correctly required the IRS to show *in camera* either (1) a confidential informant had been expressly or impliedly assured confidentiality, in accordance with *Roth*; or (2) no responsive records to Requests 1–5 existed. *Montgomery*, 330 F. Supp. 3d at 171. The IRS then submitted declarations, which the district court appropriately reviewed *in camera* and found "that the Service ha[d] satisfied one of these two requirements." *Id.* No more is required under this Court's or the Supreme Court's precedent.

### 3. *In Camera* Declarations

The Montgomerys finally argue that the district court's use of *in camera* declarations, as opposed to *in camera* review, contravenes FOIA and other binding authority. Not so. First, we review the district court's use of *in camera* submissions for abuse of discretion. *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998). We have explained on numerous occasions that "the decision whether to perform *in camera* inspection is left to the broad discretion of the trial court judge." *Id.* (internal quotation marks and citations omitted). Indeed, the FOIA statute itself provides that a court "*may* examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions . . . ." 5 U.S.C. § 552(a)(4)(B) (emphasis added).

This Court has previously given a test for "when an affidavit disclosing information assertedly exempt from production under the FOIA is proffered." *Arieff v. U.S. Dep't*

*of Navy*, 712 F.2d 1462, 1470 (D.C. Cir. 1983). In these situations, *in camera* review is required "when (1) the validity of the government's assertion of exemption cannot be evaluated without information beyond that contained in the public affidavits and in the records themselves, and (2) public disclosure of that information would compromise the secrecy asserted." *Id.* at 1471. The district court properly applied this test and determined that the declarations proffered by the IRS could not be publicly released. *Montgomery*, 356 F. Supp. 3d at 81. It further received, and ultimately rejected the merits of, three sets of briefs by the Montgomerys on the subject of the *in camera* declarations. *Id.* In other words, the Montgomerys had their voices heard with regard to the *in camera* declarations.

The Montgomerys cite *Lykins* for the proposition that there exists a distinction between *in camera* review of records and *in camera* declarations or affidavits. In fact, *Lykins supports* the use of affidavits, holding that "[t]o the extent necessary, the government *must* supply affidavits in support of its claims of exemption." *Lykins*, 725 F.2d at 1463 (emphasis added). Though *Lykins* cautions against the overuse of affidavits, it does not prohibit them and instead provides the guidance that "[w]hen a trial court does make use of *in camera* affidavits, it must see to it that such use is justified to the greatest extent possible on the public record, . . . and must then make available to the adverse party as much as possible of the *in camera* submission." *Id.* at 1465. As previously explained, the district court carefully reviewed the declarations and, mindful of the requirement that it make them as public as possible, concluded it could not publicly release them. *Montgomery*, 356 F. Supp. 3d at 81. The district court acted well within its discretion in doing so.

## ii. *Requests 6–12*

The Montgomerys renew their argument that the IRS did not conduct an adequate search for records related to Requests 6–12. The district court, in a series of opinions, initially agreed. *See Montgomery*, 330 F. Supp. 3d at 172; *Montgomery*, 2020 WL 1451597, at \*5; *Montgomery*, 514 F. Supp. 3d at 136. Eventually however, after multiple instructions, the IRS satisfied the district court of the adequacy of its search. We agree with the district court's ultimate conclusion.

In order to satisfy FOIA's aims of providing more transparency into the workings of the government, a recipient of a FOIA request must make an adequate search in its records for information answering the request. This Court has elaborated that an adequate search entails a "show[ing] that [the agency] made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). While the agency need not "search every record system," it also may not "limit its search to only one record system if there are others that are likely to turn up the information requested." *Id.* While "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search," *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003), a "positive indication[] of overlooked materials" can lead a court to determine the search was inadequate, *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999) (internal citations omitted).

In this case, the IRS initially conducted several inadequate searches for records related to Requests 6–12. In

the first, the IRS looked for responsive records only in its Integrated Data Retrieval System, finding none. *Montgomery*, 330 F. Supp. 3d at 172. The district court agreed with the Montgomerys that the IRS should search two other records systems—namely, the IRS Whistleblower Office databases and litigation files from the *Bemont* and *Southgate* cases—or explain why these systems were not likely to produce responsive results. *Id.*

In its second inadequate search, "[h]istory repeat[ed] itself," *Montgomery*, 2020 WL 1451597, at *1, with the IRS failing to search another important database, the Office of Tax Shelter Analysis, *id.* at *4. The district court lamented that the IRS had "proceeded in piecemeal fashion to search one database at a time, without ever commenting on whether other locations might contain responsive documents," leaving the district court "uncertain as to whether there are other potentially relevant databases . . . ." *Id.* at *5. In addition, the IRS's search of the litigation files resulted in over 1,000 pages of responsive documents, giving the district court a "positive indication[] of overlooked materials." *Id.* Taken together, the district court harbored "substantial doubt" regarding the adequacy of the search and once again instructed the IRS to renew its review for responsive documents. *Id.*

The district court was mostly satisfied of the adequacy of the IRS's search by the third time the issue came before it. *Montgomery*, 514 F. Supp. 3d at 136. By that time, the IRS submitted declarations that it had searched its Integrated Data Retrieval System and taxpayer master files; files in the Large Business and International Division; the Whistleblower Office; multiple types of files related to the *Bemont* and *Southgate* litigation; and the Office of Tax Shelter Analysis database. *Id.* at 131–32. The IRS also finally "recited the magic words" that "'it ha[d] searched all locations/systems reasonably likely to

contain records responsive to [Requests] 6-12.'" *Id.* at 132 (quoting an IRS declaration). The district court was satisfied by these assurances. It further rejected the Montgomerys' assertion, revived in this appeal, that the IRS's failure to uncover ten documents identified by the Montgomerys as relevant constituted an inadequate search. *Id.* at 134. The only "relatively minor exception" to the district court's satisfaction, *id.* at 136, was the IRS's failure to search the emails of several agency employees associated with the *Bemont* and *Southgate* litigation, *id.* at 135. The IRS ultimately did so to the district court's satisfaction, finally receiving summary judgment on the adequacy of the search for Requests 6–12. *Montgomery*, ECF No. 116, at *1.

We agree that the IRS has finally carried its burden of showing the adequacy of its search for documents responsive to Requests 6–12. Although the Montgomerys are not entitled "to dictate, through search instructions, the scope of [the IRS's] search," *Mobley v. C.I.A.*, 806 F.3d 568, 582 (D.C. Cir. 2015), they have identified no further databases possibly containing relevant information, *see Montgomery*, ECF No. 116, at *1. More importantly, the IRS has finally "explained its search process and why [certain] specified record systems are not reasonably likely to contain responsive records." *Mobley*, 806 F.3d at 582.

In this appeal, the Montgomerys chiefly focus on certain documents, which they number in the hundreds, that they contend were in the IRS's possession but were not located by the IRS. They also take issue with the IRS's declaration explaining that these documents were either destroyed or consolidated. The district court heard and rejected these arguments. *See Montgomery*, 514 F. Supp. 3d at 133–34, 135. We agree with the district court.

As we have noted before, "particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them." *Iturralde*, 315 F.3d at 315. This is why we judge the adequacy of a search not by its fruits, but rather "by the appropriateness of the methods used to carry out the search." *Id.* While true a requester may cast doubt on the adequacy of a search through "positive indications of overlooked materials," *id.* at 314 (citations omitted), the Montgomerys have not done so in this case, *id.* at 315. The Montgomerys do not now "maintain that the [IRS] failed to search particular offices or files where the document[s] might well have been found," *id.*, nor that the IRS "failed or refused to interview government officials for whom there was strong evidence that they might have been helpful in finding the missing documents," *id.*, nor that the IRS "ignored indications in documents found in its initial search that there were additional responsive documents elsewhere," *id.* Rather, the Montgomerys aver only that "hundreds" of documents are missing from the IRS's search. Our precedent makes clear, however, that even if this claim were true, the IRS's search in this case was not inadequate, as it "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. Nothing more is required.

Finally, as the district court explained, the IRS's declaration as to the whereabouts of the "missing" documents—namely that they were either destroyed or consolidated with other files—easily passes muster. FOIA declarants are not required to have personal knowledge of the search itself, but rather "personal knowledge of the procedures used in handling [a FOIA] request and familiarity with the documents in question." *Wisdom v. U.S. Tr. Program*, 266 F. Supp. 3d 93, 102 (D.D.C. 2017) (alteration in original) (citations omitted). As the district court noted, the relevant

declaration on this matter "reflect[ed] [the declarant's] comprehensive understanding of the documents at issue, as well as her extensive collaboration with the experienced agency employees who searched them." *Montgomery*, 514 F. Supp. 3d at 135. Again, no more is required.

### iii. *APA Review*

Finally, the Montgomerys argue that the IRS's policy of asserting a *Glomar* Response when a FOIA requester seeks whistleblower-related documents amounts to a rule, and this rule violates the Administrative Procedure Act because it did not undergo the requisite notice-and-comment process. We disagree.

Judicial review under the APA is only available when "there is no other adequate remedy in a court . . . ." 5 U.S.C. § 704. The remedy for the Montgomerys is a release of certain documents responsive to their FOIA requests. This remedy is available in court under the FOIA statute, were the Montgomerys to prevail on their claims. 5 U.S.C. § 552(a)(3)(A) (requiring an agency to "make the [requested] records promptly available to any person"); *see also* 5 U.S.C.A. § 552(a)(4)(B) (giving courts jurisdiction to "order the production of any agency records improperly withheld"). Simply because the Montgomerys do not prevail on their claims does not make them subject to the exclusive review the APA provides.

## III. Conclusion

For the reasons set forth above, we affirm the district court on all questions.