# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 16, 2011     Decided December 20, 2011

No. 10-5248

THOMAS E. MOORE, III,
APPELLANT

v.

CENTRAL INTELLIGENCE AGENCY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-01363)

———

*David L. Sobel* argued the cause for the appellant.

*Jane M. Lyons*, Assistant United States Attorney, argued the cause for the appellee. *Ronald C. Machen Jr.*, United States Attorney, and *R. Craig Lawrence*, Assistant United States Attorney, were on brief.

Before: HENDERSON, TATEL and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: This case arises under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Appellant Thomas E. Moore, III (Moore) challenges the Central Intelligence Agency's (CIA or Agency) *Glomar* response to his request for "all information or records relevant to . . . Sveinn B. Valfells" (Valfells Sr.), in which response the Agency neither confirmed nor denied whether it maintained any such records.[1] Specifically, Moore argues that the CIA has already "officially acknowledged" that at least some "CIA-originated information" was redacted from a Federal Bureau of Investigation (FBI) report dated February 1956 entitled "Sveinn B. Valfells" (FBI Report or Report) and, under our holding in *Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007), the Agency can no longer deny that it maintains that information. In our view and that of the district court, Moore has failed to meet his burden to demonstrate that the CIA has officially acknowledged any record responsive to his FOIA request. Although the CIA confirmed that some unspecified "CIA-originated information" was redacted from the FBI Report, Moore cannot isolate any specific CIA record that has been officially acknowledged by the CIA. *See id.* at 378-79. Accordingly, we affirm the district court's grant of summary judgment to the CIA.

## I. BACKGROUND

The relevant facts in this case are undisputed. By letters dated November 19, 2007, Moore submitted a series of FOIA

---

[1] A *Glomar* answer is one that, for national security reasons, neither confirms nor denies the existence of certain requested agency records. The term *Glomar* comes from our opinion in *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976), which involved a FOIA request for information regarding the "Hughes Glomar Explorer," a deep-sea exploratory vessel.

requests to the United States Department of Justice (DOJ), the CIA and the United States Department of State on behalf of his client, Sveinn Valfells (Valfells). The requests sought information regarding Valfells' grandfather, Valfells Sr., an Icelandic textile merchant who spent time in the United States during the 1940s and 1950s and who allegedly had ties to the Icelandic Communist Party (ICP).

On December 17, 2007, the CIA responded to Moore's request, stating that "the CIA can neither confirm nor deny the existence or nonexistence of records responsive to this part of your request." Letter from Scott Koch to Moore at 1 (Dec. 17, 2007). The CIA relied on FOIA exemptions (b)(1) and (b)(3) to support its response.[2]

---

[2]   Exemption (b)(1) permits an agency to withhold matters from FOIA disclosure if such matters are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Pursuant to Executive Order 12,958, an agency may withhold information if its disclosure could reasonably be expected to reveal classified intelligence sources or methods or otherwise damage the foreign relations of the United States. *See* Exec. Order No. 12,958, 70 Fed. Reg. 21,609 (Apr. 21, 2005).

Exemption (b)(3) shields matters "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3) (effective Nov. 27, 2002 to Dec. 30, 2007). The National Security Act of 1947, as amended, mandates that the Director of National Intelligence protect intelligence sources and methods from unauthorized disclosure. *See* 50 U.S.C. § 403g; *id.* § 403-1(i)(1). In his appeal, Moore does not challenge whether the CIA appropriately asserted its (b)(1) and (b)(3) exemptions.

In April 2008, in response to Moore's request to the DOJ, the FBI referred three pages of its Report to the CIA for coordination.[3] The CIA responded that certain CIA-originated information in that document should be withheld to protect classified intelligence sources and methods. The FBI subsequently released a redacted version of the Report to Moore on May 9, 2008. The Report states that, in January 1956, "T-1, an agency of the U. S. Government which conducts intelligence investigations," furnished the FBI with information indicating that Valfells Sr. had ties to the ICP. Report at 11. Although the Report does not specifically state that T-1 is the CIA, in a section entitled "Administrative Data," the Report identifies the CIA as a source of information contained in the Report: "This report is being designated 'SECRET' inasmuch as the file in the Security Office of the U. S. State Department and the information from CIA, which has been set forth in the body of this report[,] was so classified." Report at 12.

On July 23, 2009, after Moore's efforts to obtain the requested records from the CIA failed, Moore filed suit in the district court challenging its *Glomar* response. The CIA moved to dismiss or, in the alternative, for summary judgment and submitted the declaration of CIA Information Review Officer Ralph DiMaio (DiMaio) in support of its motion. In his declaration, DiMaio confirmed *inter alia* that in April 2008 the CIA "ask[ed] the FBI to withhold certain CIA-originated information [from the FBI Report] . . . in order to

---

[3]     The coordination was completed pursuant to Executive Order 12,958, section 3.6(b), which requires an agency that receives a request for documents containing information that was originally classified by another agency to refer copies of the request and the pertinent documents to the originating agency for processing. Exec. Order. No. 12,958, 60 Fed. Reg. 19,825 (Apr. 17, 1995), *amended by* Exec. Order No. 13,292, 68 Fed. Reg. 15,315 (Mar. 25, 2003).

protect intelligence sources and methods." Moore subsequently cross-moved for partial summary judgment, arguing that, given DiMaio's acknowledgment, the CIA had waived its right to issue a *Glomar* response.

The district court disagreed and, on June 17, 2010, it granted summary judgment to the CIA and denied Moore's cross-motion. *Valfells v. CIA*, 717 F. Supp. 2d 110 (D.D.C. 2010). First, the court noted that the FBI lacked the authority to make an official acknowledgment on behalf of the CIA; thus, the release of the Report by the FBI had no bearing on the CIA's ability to issue a *Glomar* response. *Id.* at 118. Second, the court found that, although DiMaio's declaration made clear that some CIA-originated information had been withheld from the FBI Report, his declaration officially acknowledged, at most, the specific information redacted from the Report. *Id.* at 120. Because Moore did not challenge the redactions, the court held that all reasonably segregable information had already been released to Moore. *Id.* Moore now appeals.

## II. ANALYSIS

"[A]n agency may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under a FOIA exception." *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982). Such a response—commonly known as a *Glomar* response—is proper if the existence *vel non* of an agency record is itself exempt from disclosure. *Wolf*, 473 F.3d at 374 (citing *Hunt v. CIA*, 981 F.2d 1116, 1118 (9th Cir. 1992); *Phillippi v. CIA*, 546 F.2d 1009, 1011 (D.C. Cir. 1976)). If, however, the agency has officially acknowledged the existence of the record, the agency can no longer use a *Glomar* response, *id.* at 378, and instead must either: (1) disclose the record to the requester or (2) establish that its contents are exempt from

disclosure and that such exemption has not been waived, *id.* at 379-80.

In his appeal, Moore does not challenge the CIA's reliance on exemptions (b)(1) and (b)(3) nor does he dispute that a *Glomar* response is proper where the existence or nonexistence of an agency record falls within a FOIA exemption. Instead, Moore argues that the CIA has officially acknowledged that it maintains information responsive to Moore's FOIA request and, therefore, can no longer use a *Glomar* answer in responding to his request. Specifically, Moore points to the October 8, 2008 DiMaio declaration in which DiMaio recited that the CIA asked the FBI to redact some "CIA-originated information" from the Report in order to protect CIA intelligence sources and methods. In our view, the DiMaio declaration does not constitute an official acknowledgment sufficient to waive *Glomar*.[4]

"[W]hen information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's otherwise valid exemption claim." *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990). But "[a] strict test applies to claims of official disclosure." *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009). To be officially disclosed: "(1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure." *Am. Civil Liberties*

---

[4] Additionally, to the extent Moore suggests that the release of the Report *by the FBI* constitutes an official acknowledgment *by the CIA*, his argument is foreclosed by our precedent. "[W]e do not deem 'official' a disclosure made by someone other than the agency from which the information is being sought." *Frugone v. CIA*, 169 F.3d 772, 774 (D.C. Cir. 1999). Thus, "only the CIA can waive its right to assert an exemption to the FOIA." *Id.* at 775.

*Union v. U.S. Dep't of Def.*, 628 F.3d 612, 620-21 (D.C. Cir. 2011). Thus, "a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983).

In *Wolf v. CIA*, where we first addressed the official acknowledgment doctrine in the *Glomar* context, we again applied it strictly. There, we made plain that, in order to overcome an agency's *Glomar* response based on an official acknowledgment, the requesting plaintiff must pinpoint an agency record that both matches the plaintiff's request and has been publicly and officially acknowledged by the agency. *See Wolf*, 473 F.3d at 378-79; *see also Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 70 (2d Cir. 2009) (agency only "precluded from making a *Glomar* response if the existence or nonexistence of the *specific records* sought by the FOIA request has been the subject of an official public acknowledgment" (citing *Wolf*, 473 F.3d at 378-79; *Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy*, 891 F.2d 414, 421 (2d Cir. 1989) (emphasis added))).

In *Wolf*, the plaintiff, a historical researcher, requested "all records about Jorge Eliecer Gaitan" (Gaitan), a Colombian presidential candidate who was assassinated in Bogota, Colombia in 1948. 473 F.3d at 372-73 (internal quotation marks omitted). After the CIA issued a *Glomar* answer to Wolf's request, Wolf filed suit. He claimed that the CIA had waived its right to issue a *Glomar* response because former CIA director Admiral R.K. Hillenkoetter (Hillenkoetter) publicly acknowledged the existence of CIA records regarding Gaitan nearly 50 years before Wolf's request. Specifically, Wolf pointed to Hillenkoetter's congressional testimony shortly after Gaitan's assassination in 1948, during which testimony Hillenkoetter read excerpts

from CIA dispatches referencing Gaitan, his associates and their ties to the communist party in Colombia. The district court rejected Wolf's official acknowledgment argument and granted summary judgment to the Agency.

We reversed the district court, holding, in light of Hillenkoetter's congressional testimony, that "the Agency's *Glomar* response [did] not suffice regarding the dispatch excerpts that reference Gaitan because the same 'officially acknowledge' the fact that CIA records 'about Jorge Eliecer Gaitan' exist." *Id.* at 379. Although we concluded that the Agency had waived its *Glomar* response as to those officially acknowledged dispatches, we also held that it had not waived its *Glomar* response as to all records about Gaitan. Instead, Wolf was entitled to disclosure of "the existence of CIA records about Gaitan that have been previously disclosed (*but not any others*)." *Id.* (emphasis added). We thus remanded the case to the district court to "determine whether the contents— as distinguished from the existence—of the officially acknowledged records" were exempt from disclosure. *Id.* at 380 (emphasis removed).

Unlike in *Wolf*, DiMaio's declaration does not identify specific records or dispatches matching Moore's FOIA request. Indeed, because the CIA-originated information was redacted before the FBI released its Report to him, Moore cannot show that the redacted information even relates to Valfells Sr. All Moore can establish is that some unspecified "CIA-originated information" was redacted from the Report. Whereas Wolf identified specific records that had been officially acknowledged by Hillenkoetter's testimony quoting therefrom, Moore can only speculate as to what (if any) records the CIA might have about Valfells Sr. In the highly sensitive context involving issues of national security, however, "[a]n agency's official acknowledgment . . . cannot be based on . . . speculation, no matter how widespread." *Id.*

at 378. As we noted in *Wolf*, "[t]he insistence on exactitude recognizes 'the Government's vital interest in information relating to national security and foreign affairs.' " *Id.* at 378 (quoting *Pub. Citizen v. Dep't of State*, 11 F.3d 198, 203 (D.C. Cir 1993)). The CIA has properly answered Moore's FOIA request with a *Glomar* response.

For the foregoing reasons, we affirm the district court's judgment.

*So ordered.*