# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

—————

**No. 22-5209**

**September Term, 2022**

FILED ON: JULY 7, 2023

JUDICIAL WATCH, INC.,
APPELLANT

v.

UNITED STATES DEPARTMENT OF JUSTICE,
APPELLEE

—————

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-01216)

—————

Before: WILKINS, *Circuit Judge*, and ROGERS and TATEL, *Senior Circuit Judges*

## J U D G M E N T

The Court considered this appeal on the record from the United States District Court for the District of Columbia (District Court) and on the briefs and oral arguments of the parties. The Court has afforded the issues full consideration and determined they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is hereby

**ORDERED AND ADJUDGED** that the District Court's July 20, 2022, Order granting appellees' motion for summary judgment and denying appellant's cross-motion for summary judgment be **AFFIRMED**.

## I.

On January 6, 2021, hundreds of people stormed the U.S. Capitol and committed violent acts (hereinafter referred to as the "January 6th events"). Following this attack on the Capitol, federal and non-federal law enforcement entities "investigat[ed], arrest[ed], and provid[ed] prosecutors evidence of individuals involved" in the January 6th events. J.A. 135. Many of the individuals involved still "have yet to be identified." J.A. 137.

In February 2021, several media outlets reported that the Bank of America played a major role in helping investigate the January 6th events, including "actively but secretly engag[ing] in [a] hunt for extremists in cooperation with the government[]" and furnishing the Federal Bureau

of Investigation ("FBI" or the "Agency") with financial records of customers who fit the following profile:

1. Customers confirmed as transacting, either through bank account debit card or credit card purchases in Washington, D.C. between 1/5 and 1/6.

2. Purchases made for Hotel/Airbnb RSVPs in DC, VA, and MD after 1/6.

3. Any purchase of weapons or at a weapons-related merchant between 1/7 and their upcoming suspected stay in [the] D.C. area around Inauguration Day.

4. Airline related purchases since 1/6.

J.A. 26–27 (Exh. A) (Tucker Carlson, *Bank of America Handed Over Customer Data to Feds Following Capitol Riot*, Fox News (Feb. 4, 2021), https://perma.cc/MB55-MWAD.); *see also* J.A. 38–41 (Exh. B.) (Jennifer Smith, *'Bye bye, Bank of America': Outraged customers boycott firm as it's revealed the bank snooped through HUNDREDS of innocent people's accounts looking for Capitol rioters - so who else is doing it?*, MailOnline (Feb. 5, 2021), https://perma.cc/GDK6-FXM4.).

Several months after news outlets reported that certain financial institutions provided records of customers to the FBI, Judicial Watch submitted a Freedom of Information Act ("FOIA") request to the Agency seeking:

> All records of communication between the FBI and any financial institution, including but not limited to Bank of America, Citibank, Chase Manhattan Bank, Discover, and/or American Express, in which the FBI sought transaction data for those financial institutions' debit and credit card account holders who made purchases in Washington, D.C., Maryland, and/or Virginia on January 5, 2021 and/or January 6, 2021.

J.A. 132. In response, the FBI invoked a *Glomar* response "neither confirm[ing] nor deny[ing] the existence of any records which would disclose the existence or non-existence of non-public law enforcement techniques, procedures, and/or guidelines." J.A. 153–54. (The term "*Glomar* response" comes from a case in which we upheld the "neither confirm nor deny" response to a FOIA request for records of Central Intelligence Agency contact with the media about a ship known as the Hughes Glomar Explorer. *Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976)). Here, while the FBI had identified "more than 300 individuals believed to have committed violent acts on Capitol grounds, including over 200 who assaulted police officers[]" resulting in multiple criminal cases where FBI agents used those defendants' financial records to establish probable

2

cause, J.A. 137, the agents did not testify specifically to how the financial records of the defendants were obtained.

Judicial Watch filed this action in the United States District Court for the District of Columbia, challenging the FBI's *Glomar* response. The FBI moved for summary judgment and Judicial Watch filed a cross-motion for summary judgment. *See* Def's Mot., ECF No. 10; Def's Mem. in Supp., ECF 10-1; Pl's Opp'n, ECF No. 15; Pl's Cross-Mot., ECF No. 16. The District Court granted summary judgment in favor of the FBI, upholding the Agency's *Glomar* response, and denied Judicial Watch's cross-motion.

## II.

Judicial Watch now appeals the District Court's order upholding the FBI's *Glomar* response, arguing (1) that the Agency failed to properly invoke its *Glomar* response under Exemption 7(E), and (2) that even if the Agency properly invoked its *Glomar* response under Exemption 7(E), Judicial Watch overcame the FBI's *Glomar* response by showing the Agency officially acknowledged it possessed documents responsive to Judicial Watch's FOIA request. Because the FBI properly invoked the *Glomar* response under Exemption 7(E) and Judicial Watch did not meet its burden of demonstrating that the FBI publicly disclosed that it "communicated" with certain financial institutions seeking customers' financial records for the purpose of investigating the January 6th events, we affirm.

The FOIA requires "broad disclosure of government records to the public" subject to the Act's nine exemptions. *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). Nevertheless, the FBI "may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception." *Id.* When an agency elects to give this answer, it is referred to as a *Glomar* response. *Id.* An agency's *Glomar* response "is proper if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Id.* Accordingly, when "determining whether the existence of agency records *vel non* fits a FOIA exemption, courts apply the general exemption review standards established in non-*Glomar* cases." *Am. Civ. Liberties Union v. CIA*, 710 F.3d 422, 426 (D.C. Cir. 2013) (citing *Wolf*, 473 F.3d at 374).

A plaintiff may defeat an agency's *Glomar* response by successfully showing that the agency "officially acknowledged otherwise exempt information through prior disclosure[.]" *Am. Civ. Liberties Union*, 710 F.3d at 426. Put differently, "when information has been officially acknowledged, its prior disclosure may be compelled even over an agency's otherwise valid exemption claim." *Id.* at 426–27 (quoting *Wolf*, 473 F.3d at 378) (internal quotation marks omitted). The plaintiff bears the "burden of pointing to specific information [disclosed] in the public domain," and the plaintiff must show that when he requested this information through a FOIA request, the agency withheld it. *Am. Civ. Liberties Union*, 710 F.3d at 427 (citation omitted).

Under FOIA, the agency has the burden to sustain its action. 5 U.S.C. § 552(a)(4)(B). We review the agency's action to withhold documents under a FOIA exemption *de novo*. *Wolf*, 473

F.3d at 374. "In conducting *de novo* review in the context of national security concerns, courts must accord *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record." *Id.* (internal quotation marks omitted). But ultimately "an agency's justification for invoking a FOIA exemption, whether directly or in the form of a *Glomar* response, is sufficient if it appears logical or plausible." *Am. Civ. Liberties Union*, 710 F.3d at 428 (internal quotation marks omitted).

## A.

Judicial Watch first argues that the FBI did not properly invoke a *Glomar* response under Exemption 7(E). To properly invoke Exemption 7(E), the FBI must show that Judicial Watch's FOIA request for any communications between the FBI and the financial institutions would be exempt from disclosure because, if the records exist, they were "compiled for law enforcement purposes," and responding to the FOIA request would (1) "disclose techniques and procedures for law enforcement investigations or prosecutions," or (2) "disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]" 5 U.S.C. § 552(b)(7)(E). "Exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). The Agency has to meet a "relatively low bar" to show risk of circumvention. *Id.*

Here, the FBI claims in an affidavit that establishing the existence or nonexistence of communications between the Agency and financial institutions would "trigger foreseeable harm to a variety of circumvention of the law interests" by "provid[ing] key pieces of information about the FBI's investigative focus, or lack thereof, into its investigation of the Capitol riot on January 6, 2021." J.A. 137. In addition, the Agency claims that confirming or denying the existence of responsive records "would reveal the types of investigative techniques or procedures being employed, or not employed, as well as [show] how the FBI is applying investigative resources, or not, in furtherance of its investigations." *Id.* In the aggregate, the FBI alleges that this information, with any other piece of information, "could provide potential investigative targets insight into who may or may not be under investigative interest . . . thereby decreasing the effectiveness of the FBI investigation(s) and increasing the vulnerability and effectiveness of specific investigatory tools at the FBI's disposal." J.A. 138. In other words, disclosure of investigative techniques risks allowing potential suspects to circumvent the law.

The FBI's affidavit clearly demonstrates how "such disclosure could reasonably be expected to risk circumvention of the law." *Blackwell*, 646 F.3d at 41. We have illustrated ad nauseam the relatively low bar the agency has to justify a *Glomar* response under Exemption 7(E). In *Blackwell*, we said that "the exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Id.* at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).

4

Given the low bar to meet 7(E) and that we "accord *substantial weight*[,]" *Wolf*, 473 F.3d at 374, to the FBI's affidavit detailing potentially classified information, the FBI has logically demonstrated how the release of alleged communications between the FBI and the financial institutions might risk circumvention of the law. Further, the Agency's reasons for providing a *Glomar* response are logical and plausible. Thus, we uphold the Agency's *Glomar* response under 7(E).

**B.**

Judicial Watch also challenges the FBI's *Glomar* response under the public acknowledgment exception, arguing that the FBI waived its right to invoke a *Glomar* response when it publicly disclosed the information that it attempted to withhold. Specifically, Judicial Watch points to public statements from FBI agents discussing that they reviewed financial records of the defendants in criminal cases involving the January 6th events as well as the Agency's response to a different FOIA request to justify its burden under the exception.

To meet the public acknowledgement exception, a plaintiff must show "(1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure." *Moore v. CIA*, 666 F.3d 1330, 1333 (D.C. Cir. 2011) (quoting *Am. Civ. Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 620–21 (D.C. Cir. 2011)).

Judicial Watch's argument that the FBI agents' affidavits in the criminal cases publicly disclosed the information requested in its FOIA request fails. Judicial Watch's request for records of any "communications between the FBI and any financial institution, . . . in which the FBI sought transaction data for those financial institutions' [customers] who made purchases in Washington, D.C., Maryland, and/or Virginia" to use in its investigation of the January 6th events, J.A. 132, 138–41, is not "as specific as the information" disclosed in the Agents' affidavits, *Moore*, 666 F.3d at 1333. The FBI agents did not disclose that the Agency itself either "communicated" with financial institutions or "sought" financial records from financial institutions. The FBI agents only noted that the financial institutions "provided" financial records, J.A. 75, but it is not clear to whom the institutions "provided" the records. Similarly, while an agent stated that he reviewed financial records that were "[s]ubpoena[ed]," J.A. 97, the agent did not specifically state that the FBI subpoenaed the records from a financial institution. Several federal and non-federal law enforcement entities investigated the January 6th events, and one of those other agencies could have subpoenaed the records. Or the FBI could have subpoenaed the records from the suspect's employer, accountant, parent, or spouse. Without the level of specificity that the public acknowledgment exception requires, detailing that the FBI "sought" financial records for the purpose of investigating the January 6th events, and that the FBI "communicat[ed]" with financial institutions for the same, Judicial Watch fails to meet its burden.

Judicial Watch claims that the FBI waived its right to invoke a *Glomar* response because it did not assert a *Glomar* response to another individual's FOIA request seeking "forms [that the

5

FBI] issued to each financial institution to obtain financial data during the period December 5, 2020 through February 6, 2021." J.A. 50. Specifically, the FBI's response to the FOIA request stated that the information requested was "categorically denied as it is located in an investigative file[.]" J.A. 52. But again, the FBI did not publicly acknowledge that it sought or communicated with the financial institutions for the purpose of investigating the January 6th events. Although the FBI notes that it "obtained" responsive records and that those records were "located" in an investigative file, it does not specifically state that the Agency "sought" or "communicat[ed]" with the financial institutions to receive those records for investigative purposes. Additionally, even though the FBI arguably discloses that it "sent a form to a financial institution" seeking financial data, *id.*, it pertains to a much broader date range and wider geographic area and therefore fails to "match" the scope of the *Glomar* response at issue here. *Wolf*, 473 F.3d at 378. Thus, Judicial Watch fails to meet its burden under the public acknowledgement exception.

## III.

For the foregoing reasons, the judgment of the District Court is affirmed.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R. CIV. P. 31(b); D.C. CIR. R. 41(a)(1).

### Per Curiam

FOR THE COURT:
Mark J. Langer, Clerk

BY: /s/
Michael C. McGrail
Deputy Clerk